COPELAND OAKS, et al., Plaintiffs,

v.

Jeffrey A. HAUPT, et al., Defendants.

No. 4:98–CV–780.

United States District Court,
N.D. Ohio,
Eastern Division.

March 25, 1999.

---

Earl M. Leiken, Chris Bator, John Edward Hebert, Baker & Hostetler, Cleveland, OH, for plaintiffs.

David B. Spalding, Law Offices Of William B. Shetler, Alliance, Ralph Eric Smearman, Smith, Marshall, Weaver & Vergon, Cleveland, OH, for defendants.

## OPINION AND ORDER

GWIN, District Judge.

On April 27, 1998, Defendants Jeffrey Haupt and Brooke Haupt (collectively, "Haupt") filed a motion for summary judgment in this lawsuit to enforce the terms of an employee benefit plan arising under the Employee Retirement Income Security Act of 1974 as amended ("ERISA") [Doc. 5]. On July 17, 1998, the Haupts filed a motion for judgment on their counterclaim [Doc. 18]. On July 22, 1998, Plaintiffs Copeland Oaks and Copeland Oaks Employee Benefit Plan (collectively, "Copeland Oaks") also filed a motion for summary judgment [Doc. 19].

In this decision, the Court interprets provisions of Copeland Oak's health care plan relating to the Haupts' claim for medical benefits and Copeland Oak's right to subrogation or reimbursement. Upon reviewing the motions and relevant record materials, the Court finds ERISA preempts that defendant's state law claims. Therefore, the Court denies Defendant Haupt's motion for judgment on its counterclaim.

The Court also finds Plaintiff Copeland Oaks is precluded from exercising its right to subrogation. Having found that Plaintiff Copeland Oaks may not exercise its right to subrogation, the Court grants the defendant's motion for summary judgment and denies plaintiff's motion.

## I. Summary Judgment Standard of Review

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987); *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.,* 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court now reviews the facts with these standards in mind.

## II. Factual Background

Copeland Oaks is a nonprofit Ohio corporation providing residential facilities for senior citizens in Sebring, Ohio. Copeland Oaks established and currently maintains the Copeland Oaks Employee Benefit Plan (the "Plan"). The Plan is a health insurance plan established under ERISA offering medical benefits for its eligible employees and their beneficiaries.[1] The Plan is self-insured; thus, the Plan pays claimed medical benefits out of the general assets of Copeland Oaks. The Plan has been in effect at all times pertinent to this action.

Jeffrey Haupt is the father and custodial parent of Brooke Haupt. At all relevant times, Jeffrey Haupt has been an "employee" of Copeland Oaks, as 29 U.S.C. § 1002(6) defines that term. The parties

have stipulated that both Jeffrey Haupt and Brooke Haupt are each a "Covered Person" under the Plan.

On August 8, 1997, Brooke Haupt, then a minor, was a passenger in a motor vehicle collision. She sustained severe and permanent injuries. From the injuries received in the August 8, 1997, accident, Brooke Haupt has incurred medical expenses greater than $300,000. The driver of the vehicle, Lewis K. Smith, was solely at fault in causing the collision and died of the injuries he sustained in the accident.

Hartford Underwriters Insurance Company ("Hartford") insured Mr. Smith's vehicle. The Hartford policy provides coverage limits of $100,000 for bodily injury and $5,000 for medical expenses payable per person per accident.

In early 1998, Jeffrey Haupt pursued a claim against Hartford on Brooke Haupt's behalf. After he made the claim, the case settled. On March 19, 1998, Jeffrey Haupt filed an Application to Settle a Minor's Claim with the Mahoning County Probate Court in Ohio. The Mahoning County Probate Court appointed Jeffrey Haupt the guardian of the Estate of Brooke A. Haupt.[2] On July 9, 1998, the probate court ordered the proceeds of the Policy, $100,000 (less $30,000 for attorney fees), to be delivered to Butler Wick Trust Company to be held in a special needs trust established for Brooke Haupt's benefit. In making this order, the Probate Court acted pursuant to Ohio Revised Code 2111.50(B)(3).[3] Hartford has acknowledged its obligation to pay under the terms of the Policy.[4]

---

1. The parties have stipulated that the Plan is an "employee welfare benefit plan" and an "employee benefit plan" as those terms are defined in 29 U.S.C. § 1002. The parties have further stipulated that, at all relevant times, Copeland Oaks has been "employer," "plan sponsor," "plan administrator," and "fiduciary" with respect to the Plan, as those terms are defined in 29 U.S.C. § 1002. The parties agree that the Plan is subject to Title I of ERISA pursuant to 29 U.S.C. § 1003(a).

2. Neither Plaintiff Copeland Oaks nor Hartford were a party to the probate action.

3. This fact was not stipulated by the parties as it occurred after the parties filed their stipulation. However, the Probate Court's order and its contents are a matter of public record, not subject to dispute by the parties.

4. Hartford has issued a check for $5,000 to Brooke Haupt's parents in satisfaction of its liability under the medical payments portion

Jeffrey Haupt filed a claim with Copeland Oaks around October 1, 1997, seeking coverage for his daughter's medical expenses under the Plan. The Plan Document and Summary Plan Description for the Copeland Oaks Employee Benefit Plan ("Plan Document") describes the operation of the Plan. It contains specific provisions governing subrogation, reimbursement, and determination of benefits by the Plan Administrator.

On April 2, 1998, Copeland Oaks filed suit, seeking a declaration from this Court that it had no obligation to pay Defendants Haupt's medical expenses until the Haupts subrogate their right to proceeds of the Hartford insurance policy. The Haupts dispute Copeland Oaks' right to the Hartford proceeds. Because of the dispute surrounding the Plan's subrogation rights, Plaintiff Copeland Oaks has paid none of the medical expenses incurred in the treatment of Brooke Haupt.

The Haupts have filed a counterclaim in which they are seeking to compel Copeland Oaks to pay Brooke Haupt's medical expenses under the Plan while retaining the settlement proceeds from the Hartford Policy. Both parties filed for summary judgment.

### III.  Preemption

Because the parties' respective rights and obligations are dictated by the terms of Plan, it is essential to decide the applicable law governing interpretation and administration of the Plan.

The parties have stipulated that the Plan is an employee benefit welfare plan as defined by 29 U.S.C. § 1002(1).[5] Generally, ERISA preempts conflicting state law:

> (A) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144. This preemption clause is broad, but modified by subsections (b)(2)(A) (commonly referred to as the "saving clause") and (b)(2)(B) (referred to as the "deemer clause"):

> (b)(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
>
> (b)(2)(B) Neither an employee benefit plan ..., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for the purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144. These three provisions interact to balance the regulatory power of

---

of the Policy. This check has not been negotiated. Although Hartford has indicated a willingness to pay the $100,000 limit under the bodily injury portion of the Policy, the record is unclear whether Hartford has paid the Estate of Lewis Smith or whether it is holding payment pending the outcome of this action.

5. For purposes of this subchapter: (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). 29 U.S.C. § 1002.

the state and federal jurisdiction under ERISA.

The Supreme Court has explained that ERISA preempts all state law with two exceptions. The savings clause returns power to the states to regulate insurance. However, if a state law concerns a plan that falls within the deemer clause, ERISA nevertheless preempts the state law:

> [The preemption clause] establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies and insurance contracts.

*FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Thus, ERISA preempts conflicting state law relating to insurance, despite application of the savings clause, if the ERISA plan at issue falls within the deemer clause.

■ The deemer clause applies only to those ERISA plans that are self-funded. *Marshall v. Employers Health Ins. Co.,* 927 F.Supp. 1068, 1071–2 (M.D.Tenn.1996), *aff'd,* 1997 WL 809997 (6th Cir.1997). The parties have stipulated that the Plan is a

---

self-funded plan.[6] Thus, the Plan falls within the control of ERISA and any conflicting state law is preempted.[7]

## IV. Discussion

Defendant Haupt claims that the Plan Administrator's decision that payments on their claim are contingent upon execution of a subrogation agreement violates the Plan Administrator's obligation to pay benefits as set forth in the Plan. Plaintiff Copeland Oaks argues that the Plan grants the Plan Administrator ultimate discretion and that the Administrator's decision was appropriate under the terms of the Plan. However, before the Court can make any evaluation as to the propriety of the decision to withhold benefits, the Court must determine the proper standard of review.

■ The language of the Plan Document determines whether the Plan Administrator's actions will be reviewed *de novo* or under another, less rigorous standard. Where the plan does not grant the administrator broad discretionary authority to interpret the plan, the administrator's decisions are subject to *de novo* review. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

In this case, the Plan Document is unambiguous in its grant of discretionary authority to the Plan Administrator. The Plan Document assigns, *inter alia,* the following duties to the Plan Administrator:

> Jeffrey Haupt's claim against Copeland Oaks and Brooke Haupt's claim against Hartford are separate and distinct. The argument continues, since Brooke Haupt disaffirmed her obligation under the Plan, the amount she recovered under the Hartford Policy is not subject to Jeffrey Haupt's agreement to subrogate under the Copeland Oaks Plan. However, this argument, the argument as to the unenforceability of the Plan provisions as against public policy, and any other arguments under conflicting Ohio law are unavailing as conflicting state law has been preempted in this case.

---

6. This stipulation is supported by the language of the plan document which states, "For employee and dependent coverage: Funding is derived from the funds of the Employer and contributions made by the covered Employees." *See* Plan Document at 43.

7. Defendants Jeffrey Haupt and Brooke Haupt argue many of their positions under state law. For example, because Brooke Haupt was a minor at the time of the accident, the Haupts argue that her initial agreement to subrogate her claim under the Copeland Oaks Plan can be disaffirmed under Ohio law. In so doing, the Haupts argue that

(1) To administer the Plan in accordance with its terms. (2) To interpret the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions. (3) To decide disputes which may arise relative to a Plan Participant's rights. (4) To prescribe procedures for filing a claim for benefits and to review claim denials.

In these duties, the Plan confers the Plan Administrator with broad discretionary powers:

It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties.

█ Because the unambiguous language of the plan confers discretionary authority to decide eligibility for benefits upon the Plan Administrator, the standard of review is the highly deferential "arbitrary and capricious" standard. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991).

█ A plan administrator's discretionary decisions on eligibility for benefits are not arbitrary and capricious if they are "rational in light of plan provisions." *Id.* at 984 (citation omitted). When it is possible to offer a reasoned explanation for a particular outcome based on the evidence, the outcome is not arbitrary or capricious. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997) (citation omitted).

Here, the Plan Document provides, in pertinent part:

When a right of recovery [i.e., an amount subject to subrogation or refund] exists, the Covered Person will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of subrogation as a condition to having the Plan make payments. In addition, the Covered Person will do nothing to prejudice the right of the Plan to subrogate.

Thus, the language authorizes the Plan Administrator to require a subrogation agreement before making payments to a Covered Person under the Plan. The Haupts contend the Court should apply a less deferential version of the arbitrary and capricious standard to this case because of a purported conflict arising from Copeland's status as both Plan Administrator and fiduciary. This argument relies largely on cases from other circuits that do not control this case.[8] Under applicable precedent, if the plaintiff establishes a conflict of interest for a decision-making fiduciary of an ERISA plan, it is merely a "factor" to be considered. *Firestone Tire and Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948.

The Plan Administrator did not completely deny coverage. Instead, the Administrator offered to make payments after the Haupts ensured they would not compromise Copeland Oaks's right of subrogation. However, in finding that subrogation was required, the Plan Administrator failed to follow the "make-whole rule" controlling in this circuit. Because the Plan Administrator failed to follow controlling precedent, his decision was arbitrary or capricious.

█ The Plan's right to subrogation is subject to the "make-whole" rule. The

**8.** In its conflict of interest discussion, the Haupts rely heavily upon *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566–67 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). *Brown* essentially adopts a re-

view standard which shifts the burden of persuasion to the fiduciary. The *Brown* decision is discussed by the Sixth Circuit in *Miller*, 925 F.2d 979 (6th Cir.1991), but is not expressly adopted or rejected. *Id.* at 984.

make-whole rule requires that an insured be made whole before an insurer can enforce its right to subrogation under ERISA, unless there is a clear contractual provision to the contrary. *Marshall,* 927 F.Supp. at 1074.

In affirming *Marshall,* the Sixth Circuit explained its adoption of the make-whole rule:

> We adopt the make-whole rule as a default rule in this circuit. Such a rule is consistent with the equitable principle that insurer does not have a right of subrogation until the insured has been fully compensated, unless this agreement itself provides to the contrary. Also, the make-whole rule is merely a default rule. If a plan sets out the extent of the subrogation right or states that the participant's right to be made whole is superseded by the plan's subrogation right no silence or ambiguity exists.

*Marshall v. Employers Health Insurance Company,* 1997 WL 809997, *4 (6th Cir. 1997). Thus, if the Plan Document is silent or ambiguous on this issue, the make-whole rule will be applied.

■ The Plan Document defines the Plan's subrogation or reimbursement rights:

> The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a priority over *any* funds paid by a third party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses.
>
> Notwithstanding its priority to funds, the Plan's subrogation and refund rights, as well as the rights assigned to it, are limited to the extent to which the Plan has made, or will make, payments for medical or dental charges as well as

any costs and fees associated with the enforcements of its rights under the Plan.

The language in the Plan Document does not explicitly override the make-whole rule, nor does it claim priority over funds when the recovery by the insured is only partial or incomplete. As such, this Court finds an ambiguity in the language of the Plan Document such that the make-whole rule should be applied in determining the rights of the parties.

Defendant Brooke Haupt has been awarded $100,000 (less attorney fees) as compensation for her injuries from third party insurer Hartford. In discussing the award, Probate Judge Maloney described the extent of Brooke Haupt's recovery:

> Ms. Haupt has sustained severe and disabling personal injuries, the very nature and value of which greatly exceed the extremely limited sums of recovery to be had herein. Neither Copeland Oaks, nor the Copeland Oaks Employee Benefit Plan have paid any of her medical bills to date. While the minor-Ward, Ms. Haupt, is entitled to be compensated for her injuries, the meager sums presently offered ... hardly constitutes any meaningful recovery.

■ Upon considering the probate court's decision, the absence of evidence to the contrary, the extent and permanency of Brooke Haupt's injuries, and her young age, there is no genuine issue regarding the failure of the Hartford policy to make Brooke Haupt whole for her injuries.

Because Brooke Haupt has not been fully compensated for her injuries and because the Plan's language is ambiguous regarding the make-whole rule, Plaintiff Copeland Oaks is precluded from exercising its right to subrogation.[9]

## V. Conclusion

Brooke Haupt's recovery from Hartford has left her under compensated for her

---

**9.** The make-whole rule is also applicable to an insurer's right to reimbursement. *Marshall,* 1997 WL 809997 at *5. Because Plan Document treats subrogation and reimburse-

ment in the same provision, the Court finds the make-whole rule precludes Copeland Oaks from asserting either a right of subroga-

injuries. The Plan Document's subrogation and reimbursement provision is ambiguous as to the make-whole rule. Therefore, the make-whole rule supersedes the terms of the Plan requiring Defendant Haupt to subrogate and precludes Plaintiff Copeland Oaks from asserting a claim to funds paid by Hartford. Plaintiff Copeland Oaks is obligated to pay Brooke Haupt's covered medical expenses.

For the reasons explained herein, the Court grants Defendant Haupt's motion for summary judgment and denies Plaintiff Copeland Oaks' motion for summary judgment. Defendant Haupt's motion for judgment on its counterclaim is denied as moot.[10]

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion and order of decision in the above-captioned matter. For the reasons explained therein, the make-whole rule supersedes the terms of the Plan requiring Defendant Haupt to subrogate and precludes Plaintiff Copeland Oaks from asserting a claim to funds paid by Hartford. Plaintiff Copeland Oaks is obligated to pay Brooke Haupt's covered medical expenses.

The Court grants Defendant Haupt's motion for summary judgment and denies Plaintiff Copeland Oaks' motion for summary judgment. Defendant Haupt's motion for judgment on its counterclaim is denied as moot. Accordingly, this action is terminated pursuant to Fed.R.Civ.P. 58.

IT IS SO ORDERED.

tion or reimbursement against the Hartford funds.

10. Defendants' counterclaim relies predominately upon arguments made under Ohio state law. The federal preemption of state law under ERISA and this Court's decision on summary judgment renders the counterclaim moot. *See* footnote 7, supra. Furthermore, the damages sought in the counterclaim are moot because Defendant's are not entitled to compensatory damages under state law since ERISA's civil enforcement remedies are exclusive, and punitive damages are, similarly. not available under ERISA. *See Varhola v. Doe,* 820 F.2d 809 (6th Cir.1987).