The plain language of this provision clearly establishes that the Plan may require the formal assignment of recovery rights as a precondition to payment of benefits, but it is equally clear that the Plan's subrogation and refund right does not vest until a covered person has accepted benefits. Hence, we find that the plan administrator abused her discretion in concluding that the Plan has a right to demand any payment of funds subject to subrogation or refund as a condition to receiving benefits, including payment of the $5,000 Hartford settlement. The Plan may require the Haupts to execute assignment documents in advance of receiving benefits, but may not require payment of funds until the Haupts accept benefits.[2]

We therefore AFFIRM the district court's conclusion that because the opt-out provision of the Copeland Oaks plan fails to establish both a priority over recovered funds and a right to any full or partial recovery, the make-whole rule will apply. However, we REVERSE the district court's finding that Brooke was made whole by her total recovery, and REMAND the case for a final resolution consistent with this opinion.

---

[2]We note that our sister circuits are in agreement on this question. Confronted with similar facts, the Eleventh Circuit concluded that although a plan's subrogation right is not enforceable until after benefits have been paid, it was not an abuse of discretion to require signing of an agreement as a precondition to payment. *Cagle* at 1520. The court noted that "[o]nce benefits are paid, participants and beneficiaries have little incentive (other than the fear of a lawsuit) to sign a subrogation agreement," and that "[c]ost concerns weigh in favor of the Fund's policy." *Id*. The Ninth Circuit, after considering the plain language of a plan in light of background principles of insurance law, also concluded that "the Plan's right to subrogation arises only after the Plan makes payment to the insured." *Barnes* at 1393.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0125P (6th Cir.)
File Name: 00a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

COPELAND OAKS and
COPELAND OAKS EMPLOYEE
BENEFIT PLAN,
    *Plaintiffs-Appellants,*

    *v.*

JEFFREY A. HAUPT and
BROOKE A. HAUPT,
    *Defendants-Appellees.*

No. 99-3471

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 98-00780—James S. Gwin, District Judge.

Argued: March 15, 2000

Decided and Filed: April 7, 2000

Before: MERRITT, DAUGHTREY, and MAGILL,[*]
Circuit Judges.

---

[*] The Honorable Frank J. Magill, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Earl M. Leiken, BAKER & HOSTETLER, Cleveland, Ohio, for Appellants. David Brian Spalding, SHETLER & SPALDING, Alliance, Ohio, for Appellees. **ON BRIEF:** Earl M. Leiken, Chris Bator, BAKER & HOSTETLER, Cleveland, Ohio, for Appellants. David Brian Spalding, SHETLER & SPALDING, Alliance, Ohio, for Appellees.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. In this ERISA action, the plaintiffs, Copeland Oaks and its employee benefits plan, appeal the district court's grant of summary judgment to the defendants, Copeland Oaks employee Jeffrey Haupt and his daughter, Brooke. Copeland Oaks brought this suit seeking a declaratory judgment regarding the terms of its medical benefits plan, and the Haupts filed a counterclaim seeking payment. On cross-motions for summary judgment, the district court held that in light of federal common law adopted by this circuit in a recent unpublished opinion, *Marshall v. Employers Health Ins. Co.*, 1997 WL 809997 (6th Cir. 1997) (per curiam), Copeland Oaks was precluded from exercising its right to subrogation or refund and that the Haupts' counterclaim was therefore moot. Only Copeland Oaks appeals the district court opinion and order, which is reported at 41 F.Supp.2d 747 (N.D. Ohio 1999). We find that the district court correctly identified the appropriate legal standard, but that there is insufficient information in the record to determine whether Copeland Oaks has a right to subrogation. We therefore reverse the district court's judgment and remand for further fact-finding.

including the Plan, will more than make her whole, and the Plan will be entitled to subrogation or refund of the excess recovery of medical expenses. Therefore, we REVERSE the district court's decision to the contrary and REMAND this case for a finding of Brooke's damages, the Plan's coverage, and whether Brooke will be made whole by her total recovery.

Finally, a word is required regarding the specific relief sought by the Plan. In its complaint, the Plan requests a declaration "that the Plan need not pay any of the medical expenses incurred in connection with the treatment of Defendant Brooke A. Haupt's accident-related injuries unless and until Defendants Haupt fully satisfy the requirements of the Plan's subrogation and reimbursement provision and any other conditions." The demand continues: "Among these requirements is paying to Plaintiffs the $5,000 already received from Hartford under the medical payments coverage of the Policy and the delivery of all required instruments and papers, including but not limited to an executed release satisfactory to Hartford." The question raised by this demand is whether the Plan, once its right of subrogation is acknowledged, can require signing of a subrogation agreement or actual payment of subrogated funds as a precondition to its payment of benefits. This is a question of plan interpretation which is committed to the administrator's sound discretion.

The relevant language in the Copeland Oaks Plan provides as follows:

> Accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any rights the Covered Person may have to recover payments from any third party or insurer... As a condition to the Plan making payments for any medical or dental charges, the Covered Person must assign to the Plan his or her rights to any recovery arising out of or related to any act or omission that caused or contributed to the Injury or Sickness for which such benefits are to be paid.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Jeffrey Haupt, an employee of Copeland Oaks, is the father and custodial parent of Brooke Haupt, a minor. Both Jeffrey and Brooke were enrolled in the Copeland Oaks Employee Benefit Plan. After Brooke incurred serious and permanent injuries in an auto accident, the Haupts filed claims with the Plan for her medical expenses and also pursued a claim against the negligent driver of the vehicle in state court. The driver's insurance policy provided coverage for bodily injury up to $100,000 and for medical expenses up to $5,000. The carrier, Hartford Insurance, offered to settle for the policy limits and issued a check to Brooke's parents in the amount of $5,000. A state probate court then ordered the company to pay the remaining $100,000, less $30,000 in attorneys' fees, into a trust account for Brooke's benefit.[1] Meanwhile, the Plan agreed to pay the more than $300,000 in claimed medical expenses, but only on the condition that the Haupts comply with the subrogation provision of the Plan. Both Brooke and Jeffrey initially signed subrogation and refund agreements, but after settling the claim against the driver, Brooke disaffirmed any and all contracts with Copeland Oaks or the Plan on the basis of her non-capacity as a minor. Jeffrey continues to demand payment for the medical expenses he incurred on Brooke's behalf.

## II. *ANALYSIS*

Copeland Oaks is an Ohio non-profit corporation which provides residential facilities for senior citizens. It has established the Copeland Oaks Employee Benefit Plan, a health insurance plan for eligible employees and their beneficiaries. The Plan is an "employee welfare benefit plan" and an "employee benefit plan" as defined in 29 U.S.C. § 1002(1) and (3). At all times relevant to these proceedings, Copeland Oaks has been the employer, plan sponsor, plan

---

[1]At the time the appellate briefs were filed, the $5,000 check had not been negotiated. Hartford Insurance has apparently deferred payment of the remaining $100,000 pending resolution of this action.

The make-whole rule provides that an insurer cannot enforce its subrogation rights unless and until the insured has been made whole by any recovery, including any payments from the insurer. *See*, *e.g.*, 16 Couch on Insurance 2d § 61:64 ("[N]o right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered *both from the insurer and the wrongdoer*"(emphasis added)). As a general rule, an insured should not be allowed to retain a double recovery at the expense of the insurer. *See*, *e.g.*, 16 Couch on Insurance 2d § 61:18 ("Subrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the case if he [sic] could recover from both the insurer and from a third person who caused the harm, and (2) reimbursing the surety for the payment which it has made.") The district court erred in concluding that because Brooke was not made whole by her recovery *from Hartford*, she was not made whole and, hence, that the Plan was obliged to pay all of her covered medical costs while she retained the Hartford settlement. We agree that the $100,000 bodily injury settlement trust cannot be subject to subrogation under the Plan, as it is not payment for medical expenses. However, it may be the case that the $5,000 settlement for medical expenses can be subrogated, if it is determined that Brooke will be more than made whole by her total recovery from all sources, including Copeland Oaks.

Unfortunately, review of this question is complicated by the fact that no court has ever made a specific factual finding regarding Brooke's total damages. Furthermore, although the Plan has consistently stated that it is willing to compensate Brooke in full for her covered medical expenses once the subrogation and refund agreement is signed, it is not entirely clear that the Plan's payments will actually make Brooke whole, since there is nothing in the record to indicate what her coverage is under the Plan.

Nevertheless, if it can be established that the Plan will compensate Brooke for an amount within $5,000 of her total damages, then Brooke's total recovery from all sources,

administrator and fiduciary of the Plan, as those terms are defined by ERISA. *See* 29 U.S.C. § 1002(5), (16), (21). The Plan is self-insured, which is to say that all benefits are paid out of the general assets of Copeland Oaks.

Part of the subrogation clause of the Plan provides:

The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a priority over *any* funds paid by a third party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses.

(Emphasis in original.)

In *Marshall*, we adopted the so-called "make whole" rule of federal common law, which requires that an insured be made whole before an insurer can enforce its right to subrogation under ERISA, unless there is a clear contractual provision to the contrary. As we held in that opinion:

Such a rule is consistent with the equitable principal that [an] insurer does not have a right of subrogation until the insured has been fully compensated, unless the agreement itself provides to the contrary. Also, the make-whole rule is merely a default rule. If a plan sets out the extent of the subrogation right or states that the participant's right to be made whole is superseded by the plan's subrogation right[,] no silence or ambiguity exists.

*Marshall*, 1997 WL 809997, at *4.

Here, Copeland Oaks argues that because it is subject only to the "arbitrary and capricious" standard of review, we should defer to its conclusion that the Plan language expressly opts out of the default make-whole rule. However, review of the *Marshall* decision, as well as rulings of our sister circuits, leads us to conclude that this position must fail. *See Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir. 1993); *Barnes*

*v. Independent Automobile Dealers Ass'n of California Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir. 1995); *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997). As noted by the Eleventh Circuit, were we to accept Copeland Oaks' position, "the [Plan] could avoid a default rule of insurance law applicable in the ERISA context merely by giving itself discretion to interpret the plan. We do not believe that ERISA gives the Fund that kind of authority, which is denied to insurance companies not governed by ERISA." *Cagle*, 112 F.3d at 1522. Furthermore, we are mindful of the fact, recently reiterated by a panel of this circuit, that even an arbitrary and capricious standard of review can be tempered by considering conflicts of interest such as those implicit in any self-funded plan, and by construing ambiguities against a plan drafter. *See University Hospitals v. Emerson Electric Co.*, 202 F.3d 839, 846-7 (6th Cir. 2000).

Hence, we now hold that in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery. In the absence of such clear and specific language rejecting the make-whole rule -- with clarity and specificity ultimately determined by the reviewing court -- it is arbitrary and capricious for a plan administrator not to apply the default. We find in this case that because the language of the Copeland Oaks Plan fails to establish its priority right over any *partial* recovery, the district court correctly applied the make-whole rule.

However, the district court next found that Brooke Haupt had not been made whole by the settlement entered in the state court proceeding. *See Copeland Oaks*, 41 F.Supp.2d at 754. As a result, the district court entered summary judgment for the defendants, held that the motion for judgment on the counterclaim was moot, and dismissed the action. We find that in reaching this conclusion, the district court was mistaken in its understanding of law, and so abused its discretion.