{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas we are asked to consider whether the trial court erred in granting the summary judgment motions of appellees, Westfield Insurance Company ("Westfield"), Progressive Preferred Insurance ("Progressive") and Ohio Operating Engineers Health and Welfare Plan ("The Health Plan").
 {¶ 2} On May 1, 1998, appellant, Joanne Galusha, was seriously injured in a motor vehicle accident caused by Stanley Kujawski. Mr. Kujawski died as a result of the injuries he received in the accident. During the relevant period the decedent was insured by Allstate Insurance Company. The "applicable limit" of his motor vehicle liability insurance was $50,000. Joanne and her husband, appellant, Larry Galusha, were provided with underinsured/uninsured motorist coverage under a policy issued by Farmers Insurance of Columbus, Inc. ("Farmers"). The limit in that policy was $30,000 per person/$60,000 per accident.
 {¶ 3} During the applicable period, appellants also held a insurance policy covering loss to their mobile home with Progressive. In addition, Larry was[1] a member of the International Union of Operating Engineers, Local 18 ("Union"). At the time of Joanne's injury, the Union had "Business Auto Coverage" under a Westfield Commercial Insurance Policy. Finally, appellants were provided with medical coverage under The Health Plan, a union sponsored, self-insured health and welfare benefits plan governed by the Employee Retirement Income Security Act of 1974,29 U.S.C. § 1001, et seq. ("ERISA"). The Health Plan paid $353,622.31 of the total of $438,398.30 in medical bills incurred as a result of the May 1, 1998 accident.
 {¶ 4} On December 10, 1999, appellants filed a negligence/loss of consortium suit against Sandra Pass, Administrator of the Estate of Stanley M. Kujawski ("Estate"). In their initial complaint, first amended complaint and their second amended complaint, appellants also asked, among other things[2], for declaratory judgments finding that they were entitled to underinsured motorist coverage under the Progressive and Westfield policies. They also requested a declaration of their rights under The Health Plan that included a determination that the "subrogation" provisions of the plan were unenforceable with regard to any sums recovered by appellants as partial compensation for the injuries sustained as the result of the May 1, 1998 accident.
 {¶ 5} The Health Plan filed a counterclaim seeking a declaratory judgment finding that it was entitled to reimbursement for the amount expended on Joanne Galusha's medical bills. Progressive filed a counterclaim asking the common pleas court to declare that there was no underinsured motorist coverage under the mobile home policy. In the event that the court declared that underinsured motorist coverage was available under its policy, Progressive also filed a cross-claim against the Estate seeking indemnification and/or contribution.
 {¶ 6} Appellants, Westfield, Progressive and The Health Plan filed separate motions for summary judgment on their respective claims. Appellants settled their suit against the decedent's estate and with the decedent's motor vehicle insurer, that is, Allstate, for $213,796.17. They therefore dismissed, with prejudice, their claim against the Estate.
 {¶ 7} In the judgment appealed in this cause, the trial court examined the language of the Westfield and Progressive policies and The Health Plan, applied the pertinent law to the facts offered in support of and in opposition to the motions for summary judgment and found in favor of all three appellees. Appellants appeal that judgment and assert the following assignments of error:
 {¶ 8} "The trial court's decision to deny summary judgment to appellants and grant summary judgment to appellee Westfield Insurance Company (`Westfield') was in error since appellants are entitled to uninsured/underinsured motorist coverage from the business auto coverage of the commercial policy that Westfield issued to International Union of Operating Engineers Local 18 (`IUOE Local 18')."
 {¶ 9} "2. The trial court's decision to deny summary judgment to Westfield was in error since appellants are entitled to UM/UIM coverage from the umbrella coverage of the commercial insurance policy that Westfield issued to IUOE Local 18."
 {¶ 10} "3. The trial court's decision to deny summary judgment to appellants and grant summary judgment to appellee Progressive [Preferred] Insurance Company (`Progressive') was in error since appellants are entitled to UM/UIM coverage from the mobile home policy they had purchased from Progressive."
 {¶ 11} "4. The trial court's decision to deny summary judgment to appellants and grant summary judgment to appellee Ohio Operating Engineers Health and Welfare Plan (`OOEHWP') was in error since the OOEHWP reimbursement language fails to establish either the priority of OOEHWP's claim or its right to reimbursement from appellants' partial recovery on their third party tort claim."
 {¶ 12} This case is before the court on the trial court's rulings on summary judgment motions. Generally, summary judgment is appropriate where the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). However, in this cause there is no genuine issue of material fact. Rather, the dispute before the court involves only questions of law, that is, the construction of insurance contracts. Such questions are also appropriate for determination on summary judgment. Lovewell v. Physicians Ins. Co. (1997), 79 Ohio St.3d 143,144.
 {¶ 13} For clarity of discussion, we shall, as did the trial court, divide this decision into three parts.
 THE WESTFIELD POLICY {¶ 14} Appellants' first and second assignments of error contend that the trial court erred in finding that underinsured motorist coverage was not available to them under the "Business Auto Coverage" and the "Commercial Umbrella Coverage" sections of the Union's commercial insurance policy.
 {¶ 15} Because the language in the underinsured/uninsured endorsement to the Business Auto Coverage section of the Westfield insurance policy tracks the language in the primary policy at issue inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, appellants maintain that the rule set forth in Scott-Pontzer is applicable to the case under consideration.
 {¶ 16} In Scott-Ponzer, an employee of Superior Dairy, Inc. ("Superior Dairy") was killed in a motor vehicle accident while he was driving his spouse's vehicle. Id. at 660-661. The question on appeal to the Ohio Supreme Court was whether, as an employee of the dairy, the decedent was an "insured" for the purposes of underinsured coverage pursuant to the commercial motor vehicle issued to Superior Dairy by Liberty Fire Insurance Company ("Liberty Fire") and an umbrella insurance policy issued to Superior Dairy by Liberty Mutual Insurance Company ("Liberty Mutual"). Id. at 662.
 {¶ 17} The named insured in the Liberty Fire policy was Superior Dairy, a corporation. Id. at 663. The underinsured/uninsured motorist coverage provision in that policy defined an insured as, inter alia, "You." Id. While Liberty Fire argued that "You" referred only to the named insured, Superior Dairy, the Ohio Supreme Court found that the term was ambiguous and could, therefore, include an individual employee. Id. at 664.
 {¶ 18} The Scott-Pontzer court reasoned:
 {¶ 19} "*** [I]t would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons including to the corporation's employees." Id.
 {¶ 20} Based upon the foregoing reasoning, Ohio's high court found that the employees of Superior Dairy were entitled to underinsured motorist coverage under the Liberty Fire insurance policy. Id. at 665. Having concluded that the decedent, as an employee of Superior Dairy, was entitled to underinsured motorist coverage pursuant to the Liberty Fire commercial policy, the Ohio Supreme Court further found that Liberty Mutual failed to offer underinsured/uninsured motorist coverage through the umbrella policy issued to the dairy. Id. at 666. The Scott-Pontzer
court therefore found that the decedent was entitled to underinsured motorist coverage under the umbrella policy by operation of law. Id.
 {¶ 21} Appellants ask this court to apply Scott-Pontzer to the case under consideration because members of a union are comparable to the employees of a corporation. They conclude, therefore, that when "You" in the Westfield commercial insurance policy refers to the Union as the named insured, members of the union are also entitled to underinsured motorist coverage pursuant to the policy's underinsured/uninsured endorsement. We disagree.
 {¶ 22} Assuming, arguendo, that Larry was still a member of the Union, Scott-Pontzer is inapplicable to this cause. The Union is insured as a corporation having its own employees that carry on the day-to-day business of the Union. Arguably, Scott-Pontzer would entitle appellants to coverage under the Westfield commercial insurance policy if either was an employee of the Union or a relative of an employee of the Union. However, that is not the case in this instance.
 {¶ 23} Moreover, the cases cited in support of appellants' argument are not persuasive. In Bianchi v. Moore, Admr. (May 11, 2001), Ottawa App. No. OT-00-007, this court reluctantly followed Scott-Pontzer
in a circumstance where a township trustee was injured as the result of a motor vehicle-pedestrian accident. The motorist was uninsured. We concluded that the trustee was entitled to uninsured motorist coverage through the township's commercial motor vehicle insurance policy. Id. Clearly, Bianchi involved a situation analogous to that found inScott-Pontzer. This case does not.
 {¶ 24} Appellants also assert that their argument is supported by a case decided by the Tenth District Court of Appeals. See Tate v.Pirnat (Oct. 14, 1999), Franklin App. No. 98AP-1189. The Tate court found that the word "you" in describing the insured in a commercial general liability policy included not only the named insured, a fraternity's national headquarters, but also the members of the fraternity. Id. Nonetheless, the decision in Tate did not involve underinsured/uninsured motorist coverage. Rather, the party allegedly covered by the fraternity's liability insurance in the Tate case was the tortfeasor, who was operating a van leased for the purpose of fraternity business when he lost control of the vehicle and caused injury to Tate, a passenger in the vehicle and a fellow fraternity member. Id. Thus, Tate is also distinguishable from the present case.
 {¶ 25} Finally, the two common pleas court cases cited by appellant are neither of any precedential value to this court in making its decision nor do we find them persuasive. Therefore, we conclude, as did the trial court, that appellants are not afforded underinsured motorist coverage under the Westfield commercial insurance policy. Accordingly, appellants' first assignment of error is found not well-taken.
 {¶ 26} It follows that because they are not "insureds" under the primary insurance policy, appellants cannot be "insureds" within the meaning of the Westfield umbrella policy. Specifically, the pertinent provision of the umbrella policy defines an "insured" as "Any other person or organization which is included as an insured under the Schedule of Underlying Insurance but only insofar as coverage is afforded to that person or organization by that insurance." Westfield Commercial Umbrella Coverage, Section II (3)(b). Therefore, appellants' second assignment of error is found not well-taken.
 PROGRESSIVE INSURANCE POLICY {¶ 27} In their third assignment of error, appellants claim that the trial court erred when it found that appellants were not entitled to underinsured motorist coverage pursuant to the Progressive policy that insures the couple's mobile home. Because the Progressive policy does not define the term "mobile home," appellants maintain that the statutory meaning set forth in R.C. 4501.01(B) must be employed. Since this statute includes a mobile home within its definition of a "motor vehicle," appellants argue that underinsured motorist coverage is included in the Progressive policy by operation of law.
 {¶ 28} Construction of an insurance contract is a matter of law.Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214. The goal in construing the policy is to determine the intent of the parties.Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353, 361. Simply because the policy does not define a term does not mean that the policy is ambiguous. NationwideMut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. Instead, terms in a contract are construed to give consistent meaning to the contract as a whole; thus, a court will find a contract term ambiguous only if its meaning cannot be ascertained after reference to the other terms and the writing as a whole. Adelman v. Timman (1997),117 Ohio App.3d 544, 551.
 {¶ 29} Here, reading the Progressive insurance policy as a whole and with reference to the other terms in the policy, we conclude that the term "mobile home" means appellants' residence.
 {¶ 30} The policy is titled "Ohio Mobile Home/Manufactured Home Policy." The definitions section of the policy discloses several terms signifying the meaning of the phrase "mobile home". "Insured Premises" is defined in the policy as "the mobile home and adjacent structures while not in transit." "In Transit" means "the time period during which all utilities are disconnected for the purpose of transporting the mobile home from one location to another." A "Resident" is a "person living in your mobile home household." An "Insured Person" includes the named insured and specified residents of the insured's household. Moreover, various parts throughout the policy also point to the meaning of "mobile home" in this particular context. The property covered in the policy is the mobile home described in the Declarations and includes "permanently attached additions, original parts, equipment and accessories installed by the manufacturer, located on the insured premises." Id. at Part I(A)-Property Covered. The property covered also expressly consists of personal property such as "household and other items usual or incidental to the occupancy of the mobile home as your dwelling." Id. at Part I(C)-Property Covered.
 {¶ 31} Additional coverages, e.g., living expenses if the insured cannot live in the mobile home due to a covered loss, are provided if the mobile home is a primary residence. Id. at Part I(D)(1)-Property Covered. The declarations page identifies the mobile home as appellants' primary residence. Part I(D)(1)-Property Covered further allows increased living expenses necessary to maintain the household's customary standard of living while the mobile home is not habitable because of a covered loss.
 {¶ 32} Furthermore, certain losses are not covered or are excluded. For example, loss to the mobile home, adjacent structures or personal property is not covered while the mobile home is in transit. Part I(B)(8)-Exclusions. Part II(A)(5)(b)-Exclusions specifically excludes coverage for bodily injury or property damage "arising out of the ownership, maintenance or use of any land motor vehicle, whether or not licensed for road use, on or off public roads." This section also excludes coverage for any bodily injury or damage "arising out of any operation necessary or related to the mobile home while in transit." Part II(A)(9)(b)-Exclusions
 {¶ 33} While the foregoing catalog of terms in the Progressive policy from which we can ascertain the meaning of "mobile home" is not exhaustive, we find that the same is sufficient to identify that meaning as appellants' residence or home and the writing itself as a homeowner's insurance policy. Therefore, there is no ambiguity in the Progressive policy and the definition of "mobile home" found in R.C. 4501.01(B) is inapplicable.
 {¶ 34} For this reason, we find that the trial court did not err in granting summary judgment to Progressive as a matter of law. Appellants' third assignment of error is found not well-taken.
 THE HEALTH PLAN {¶ 35} In their fourth assignment of error, appellants contend that the trial court erred in granting summary judgment to The Health Plan on the issue of whether the plan is entitled to reimbursement of the full amount of benefits provided to Joanne Galusha from third party funds. Appellants urge that The Health Plan fails to establish either the priority of its claim or its right to reimbursement.
 {¶ 36} It is undisputed that The Health Plan is governed by ERISA. ERISA preempts state regulatory laws and common law rules related to self-funded employee benefit plans. Richland Hosp. Inc. v. Ralyon
(1987), 33 Ohio St.3d 87, 91; Halley v. Ohio Co. (1995),107 Ohio App.3d 518, 522-523. Stephens v. Emanhiser (Aug. 24, 1999), Seneca App. No. 13-99-03 (Citation omitted.). Consequently, the outcome of this case is governed by federal law. Stephens v. Emanhiser, supra.
 {¶ 37} When the language of an ERISA plan is silent or ambiguous as to subrogation or reimbursement rights, federal common law requires that the insured be made whole before the insurer can recover. CopelandOaks v. Haupt (C.A. 6, 2000), 209 F.3d 811, 813. Nevertheless, the benefit provider can opt out of this "default" make-whole rule by using specific and clear language in its plan that establishes both a priority to recovered funds and a right to full or partial recovery. Id. at 813-814. See, also, Hiney Printing Co. v. Brantner (C.A. 6, 2001),243 F.3d 956, 959.
 {¶ 38} In the instant case, The Health Plan reads, in material part:
 {¶ 39} "THIRD PARTY REIMBURSEMENT AND SUBROGATION
 {¶ 40} "This provision applies when any person or organization (`third party') is or may be liable for, or pays any amount of money for, any injury, illness or other loss for which benefits are payable under this Plan."
 {¶ 41} "Reimbursement
 {¶ 42} "***
 {¶ 43} "2. If the third party does not make payment before this Plan pays:
 {¶ 44} "a. this Plan will pay any benefits due;
 {¶ 45} "b. when the payment is later made by the third party, this Plan is entitled to be repaid first for any and all benefits paid for the same injury, illness or other loss for which the payment is made. As soon as the payment is made, the Member, Eligible Dependent, beneficiary, or legal representative is obligated to immediately notify the Plan and promptly return the payment to this Plan. ***.
 {¶ 46} "c. the obligation to repay this Plan will be binding upon the Member, Eligible Dependent, beneficiary, or legal representative regardless of whether:
 {¶ 47} "1) the payment received from the third party is the result of a court judgment, arbitration award, compromise settlement, or any other arrangement; or
 {¶ 48} "2) the third party admits liability; or
 {¶ 49} "3) the medical expenses or loss of income are itemized in the third party payment; or
 {¶ 50} "4) the covered individual has been paid by the third party for all losses sustained or alleged."
 {¶ 51} A review of the foregoing reimbursement clause discloses that The Health Plan uses specific and clear language to establish its priority to recovered funds and a right to full or partial recovery.
 {¶ 52} The Health Plan unambiguously states that it shall be repaid first from any recovery received by the member (Larry) or eligible dependent (Joanne) from a third party. The Health Plan also establishes that it shall be repaid any and all benefits disbursed on behalf of the member or eligible dependent. The plan also makes clear the fact that reimbursement must be made regardless of whether the medical expenses or loss of income is itemized in the recovery from the third party. Finally, the reimbursement clause is unambiguous in stating that repayment must be made to the plan even if the member or eligible dependent has not been fully compensated for his or her loss. Thus, The Health Plan comports with the standard set forth in Copeland Oaks v.Haupt, and the make-whole rule is inapplicable to this cause. Therefore, the trial court did not err in granting summary judgment to The Health Plan, and appellant's fourth assignment of error is found not well-taken.
 {¶ 53} On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] It is undisputed that Larry was a member of the Union until his retirement 12 years prior to the accident in which his wife was injured. Whether he was a member of the Union on May 1, 1998 is unknown, but it is apparently conceded by Westfield for the purpose of this appeal.
[2] Appellants also requested a declaration of their rights under the Farmers Insurance of Columbus, Inc.'s policy, as well as their right to underinsured/uninsured motorist coverage under a policy issued by Fidelity and Guaranty Insurance Underwriter, Inc., to the Operating Engineers Apprenticeship Fund. Appellants later voluntarily dismissed, without prejudice, both of these claims.