OPINION
{¶ 1} Defendant-appellant Aultcare Corporation appeals from the October 16, 2002, Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by plaintiffs-appellees.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 7, 2001, appellees Marilyn Cunningham and Richard Cunningham were injured in an automobile accident. As a result of the accident appellee, Marilyn Cunningham incurred over $165,000.00 in medical and hospital bills and appellee Richard Cunningham incurred over $1,164.00.
 {¶ 3} At the time of the accident, appellee Marilyn Cunningham was employed with the U.S. Department of Justice and, for such reason, the Cunninghams were covered participants under a Federal Employee Health Benefit Plan. Appellant Aultcare Corporation is the third party claims administrator for such plan. The reimbursement clause of the insurance contract between appellant Aultcare and appellees provides as follows:
 {¶ 4} "If a covered person is sick or injured as a result of the act or omission of another person or party, the Plan requires that it be reimbursed for the benefits provided in an amount not to exceed the amount of the recovery, or that it be subrogated to the person's right to the extent of the benefit received under this Plan, including the right to bring suit in the person's name."
 {¶ 5} On December 14, 2001, appellees filed a complaint against Edward A. Gravila, the tortfeasor, and appellant Aultcare in the Stark County Court of Common Pleas. Appellees, in their complaint, alleged that appellant Aultcare "claims subrogation rights against Plaintiffs for medical payment benefits. . . . Aultcare is not entitled to recover any amounts for benefits paid." After appellant filed a motion to dismiss pursuant to Civ.R. 12(B)(6), appellees, with leave of court, filed an amended complaint on January 22, 2002. Appellees, in their amended complaint, sought an order declaring that appellant Aultcare "shall not be entitled to recover any amount on their subrogation claim for medical benefits paid on behalf of Plaintiffs until such time as Plaintiffs have been fully compensated for their damages, . . ."
 {¶ 6} Subsequently, on February 8, 2002, appellant Aultcare filed a Notice of Removal to the United States District Court for the Northern District of Ohio on the grounds that appellees' claim was exclusively governed by the Federal Employees Health Benefit Act (FEHBA),5 U.S.C. § 8901 et seq. On April 24, 2002, Judge Economus of the District Court remanded the case back to the Stark County Court of Common Pleas, holding that FEHBA did not completely preempt state law.
 {¶ 7} Thereafter, on August 12, 2002, appellees filed a Motion for Summary Judgment. Appellees, in their motion, argued that the reimbursement clause, which is cited above, was "ambiguous, unenforceable and against public policy" and that appellant Aultcare was not entitled to reimbursement since appellees had not been, and would not, be fully compensated for their injuries. After appellees filed an Amended Motion for Summary Judgment on October 1, 2002, appellant Aultcare filed a response to the same. Appellant Aultcare, in its October 7, 2002, response, argued, in part, that federal law, rather than state law, applied, that the terms of the reimbursement clause were clear and unambiguous and that, therefore, appellant was entitled to "be reimbursed in an amount equal to the benefits provided on Plaintiffs [sic] behalf in the amount of $142,265.88."[1] Appellees filed a reply to appellant Aultcare's response on October 10, 2002.
 {¶ 8} As memorialized in a Judgment Entry filed on October 16, 2002, the trial court granted appellees' Motion for Summary Judgment.
 {¶ 9} It is from the trial court's October 16, 2002, Judgment Entry that appellant Aultcare now appeals, raising the following assignment of error:
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF ON THE CLAIM OF AULTCARE CORPORATION FOR MEDICAL BENEFITS PAID BY AULTCARE TO OR ON BEHALF OF PLAINTIFF."
 {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 13} It is in accordance with this standard that we review appellant's sole assignment of error.
 I {¶ 14} Appellant, in its sole assignment of error, argues that the trial court erred in granting summary judgment to appellees. Appellant specifically contends that the trial court erred in applying Ohio law to determine the parties' rights and duties under the reimbursement clause of a Federal Employee Health Benefit Act Plan and in determining that appellees would not be fully compensated by the available automobile insurance.
 {¶ 15} At issue in this case is whether, in the case sub judice, Ohio law is preempted by federal law with respect to the enforceability of the reimbursement clause in the insurance contract between appellant and appellees. In order to address such issue, we must first distinguish between complete preemption and ordinary preemption. As noted by appellees, a plaintiff may generally avoid federal jurisdiction entirely by pleading solely state law claims. Franchise Tax Bd. of Calif. v.Constr. Laborers Vacation Trust for S.Cal. (1983), 463 U.S. 1,103 S.Ct. 2841. However, there is an exception to this general rule. If federal lawcompletely preempts a plaintiff's state law claim, regardless of the artfulness of the pleading, a plaintiff cannot escape federal jurisdiction. Botsford v. Blue Cross and Blue Shield of Montana, Inc. (2002), 314 F.3d 390. "To preempt state-law causes of action completely, federal law must both: (1) conflict with state law (conflict preemption) and (2) provide remedies that displace state law remedies (displacement)." Id. at 393 While ordinary preemption is a defense to the application of state law and may be invoked in either federal or state court, in contrast, complete preemption provides a basis for federal jurisdiction as opposed to simply a defense. See Caterpiller, Inc. v.Williams (1987), 482 U.S. 386, 107 S.Ct. 2425. In the case of complete preemption, removal to federal court is proper. See Bastien v. AT TWireless Services, Inc. (2000), 205 F.3d 983.
 {¶ 16} The Federal Employee Health Benefits Act (FEHBA) was enacted in 1959 to provide health insurance coverage for federal employees and their dependents. Such act contains an express preemption clause. Prior to 1998, such clause read as follows: "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any state or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractualprovisions." (Emphasis added). However, in 1998, FEHBA was amended to broaden its scope. As now codified, FEHBA reads as follows: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." See 5 U.S.C. § 8902(m)(1) (2002).
 {¶ 17} Judge Economus, in his opinion remanding this case back to the trial court, specifically held that FEHBA did not completely preempt state law and, therefore, that the doctrine of complete preemption was not applicable. In so holding, Judge Economus found that "Congress did not intend in the FEHBA to completely preempt state law" and that there is no parallel federal cause of action created by FEHBA.
 {¶ 18} Thus, the issue for determination now by this Court is whether, as appellant alleges, the trial court erred in applying Ohio law since FEHBA, in the case sub judice, preempts state law with respect to whether the reimbursement clause is enforceable.
 {¶ 19} As is stated above, the reimbursement clause of the insurance contract between appellant Aultcare and appellees provides as follows:
 {¶ 20} "If a covered person is sick or injured as a result of the act or omission of another person or party, the Plan requires that it be reimbursed for the benefits provided in an amount not to exceed the amount of the recovery, or that it be subrogated to the person's right to the extent of the benefit received under this Plan, including the right to bring suit in the person's name."
 {¶ 21} The trial court, in granting summary judgment to appellees on their complaint for declaratory judgment, which had requested that appellant not be allowed to recover any of its medical payments, apparently applied Ohio's "make whole" rule, which was discussed in appellee's Motion for Summary Judgment. In Blue Cross Blue ShieldMutual of Ohio v. Hrenko, 72 Ohio St.3d 120, 1995-Ohio-306,647 N.E.2d 1358, the Ohio Supreme Court held, as follows: "Pursuant to the terms of an insurance contract, a health insurer that has paid medical benefits to its insured and has been subrogated to the rights of its insured may recover from the insured after the insured receives fullcompensation by way of a settlement with the insured's uninsured motorist carrier." Syllabus. (Emphasis added). See also Central Reserve Life Ins.v. Hartzell (Nov. 30, 1995), Tusc. App. No. 94AP120094. Apparently finding that appellees had not been fully compensated,[2] the trial court, in the case sub judice, held that appellant could not enforce the reimbursement clause. Appellant now contends that FEHBA preempts Ohio's "make whole" rule by providing, as is stated above, that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."
 {¶ 22} ERISA has a preemption provision that is similar to that of FEHBA. For such reason, ERISA preemption cases have often been considered in deciding FEHBA preemption issues. See, for example, Burkey v.Government Employees Hosp. Ass'n. (5th Cir. 1993), 983 F.2d 656, 660. We shall, therefore, consider ERISA cases in deciding this appeal.
 {¶ 23} Cases interpreting ERISA plans have held that when the language of such a plan is silent or ambiguous as to subrogation or reimbursement rights, federal common law requires that an insured be made whole before the insurer can recover. Galusha v. Pass, Lucas App. No. L-02-1134, 2003-Ohio-1036, citing Copeland Oaks v. Haupt (C.A. 6, 2000),209 F.3d 811, 813. As noted by the court in Galusha, "[n]evertheless, the benefit provider can opt out of this `default' make-whole rule by using specific and clear language in its plan that establishes both a priority to the recovered funds and a right to full or partial recovery." Id., citing Copeland Oaks, supra. at 813-814. The United States District Court for the Northern District of Ohio, in interpreting the federal "make-whole" rule, held that a reimbursement provision in an ERISA plan was not enforceable where the provision failed to "expressly override the make-whole rule." See Community Ins. Co. v. Ohayon (1999),73 F. Supp.2d 862, 867.[3] The Court, in Ohayon, specifically held, in part, as follows:
 {¶ 24} "Although this language gives Community Insurance a right to subrogation or reimbursement against claimants who recover damages from third parties, the language does not clearly define these rights. . . . The reimbursement provision fails to disclose the extent the insurer's rights take priority over the insured's recovery where the recovery is partial or incomplete. Second, the reimbursement provision does not expressly override the make-whole rule. Third, the policy language fails to mention that an insured party may have a right to retain any recovery that exceeds the amount paid to an insurer who exercises its right to subrogation or reimbursement. The absence of these disclosures create ambiguity." Id. at 866-867.
 {¶ 25} Based on the foregoing, we find that even if the trial court erred in applying Ohio, as opposed to federal, law, the trial court did not err in granting summary judgment to appellant. Applying federal law, we find that the reimbursement clause is not enforceable under the federal make whole rule since the clause is ambiguous. In the case sub judice, the reimbursement clause does not clearly override the "make whole" rule or disclose the insurer's rights to priority when the recovery is partial or incomplete. See Ohayon, supra. In addition, as noted by appellee, the clause is ambiguous since it fails to identify any third party sources from whom recovery may be sought. For such reason, we find that the clause is ambiguous and that, under either federal or Ohio law, the "make whole" rule must be applied.[4]
 {¶ 26} However, although we find that the trial court was correct in holding that the "make whole" rule applied, we concur with appellant that the trial court erred in prematurely applying such rule. As noted by appellant in its brief, at the time the trial court granted appellee's Motion for Summary Judgment, appellee's claim for damages against the tortfeasor was still pending. While appellee's medical bills totaled in excess of $165,000.00[5], appellee, in the affidavit attached to her motion, indicated that she had lost wages in excess of $30,000.00 and that she continued to suffer daily pain and other problems as a result of the accident. While the tortfeasor in this matter had coverage available in the amount of $12,500.00, appellee herself had UM/UIM coverage available with limits of $250,000/$500,000. We concur with appellee that, since there has been no determination that appellee's total damages, medical and otherwise, exceed the total available coverage, the trial court had no basis to apply the "make whole" rule.
 {¶ 27} Appellant's sole assignment of error is, therefore, sustained.
 {¶ 28} Accordingly, the judgment of the Stark County Court of Common Pleas granting summary judgment in favor of appellees is reversed and remanded.
By Edwards, J., Gwin, P.J. and Farmer, J. concurs.
In Re: Summary Judgment — PI.
[1] Appellant, in response to appellees' Motion for Summary Judgment, indicated that it had "satisfied medical bills in the amount of $164,182.33 for $141,277.97."
[2] The trial court, in its October 16, 2002, entry granting appellees' Motion for Summary Judgment, did not give its reasons for granting such motion.
[3] The reimbursement provision, in Ohayon, stated as follows: "If you recover damages from any party or through any coverage named above, you must hold in trust for us the proceeds of the recovery and must reimburse us to the extent of payments made."
[4] See also Stephens v. Emanhiser, Seneca App. No. 13-99-03, 1999-Ohio-849, which discussed a subrogation clause in an insurance contract. In Stephens, the court noted that, under both Ohio state law and federal common law, the insurer does not have a right to subrogation until the insured has been fully compensated unless the subrogation provision "clearly and unequivocally" provides to the contrary. In Stephens, the subrogation clause clearly stated that the participant's right to be made whole was superseded by the plan's right to subrogation. The plan, in Stephens, was governed by ERISA.
[5] As is stated in fn. 1, appellant negotiated a payment of $141,277.97 for such bills.