OPINION
{¶ 1} This is an appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants, American Manufacturers Mutual Insurance Company ("American"), Federal Insurance Company ("Federal") and SuperValu Holdings, Inc. ("SuperValu"). For the following reasons, we affirm.
 {¶ 2} This action arises from an automobile accident that occurred on July 22, 2001. On that date, Sherry Boerger ("plaintiff") and her husband were passengers in a vehicle operated by defendant Christopher Davis. Defendant Davis negligently drove off the road and struck a fence post and overturned the automobile. Plaintiff suffered serious injuries and her husband died as a result of the accident. Defendant Davis was an uninsured or underinsured motorist.[1]
 {¶ 3} SuperValu employed plaintiff's husband SuperValu was the named insured under a policy issued by defendant American. The original policy was effective March 1, 1999. It was renewed on March 1, 2000 and March 1, 2001. On March 30, 2001, Paul Hajduk, SuperValu's corporate risk manager, executed a document purporting to reject uninsured/underinsured motorists ("UM/UIM") coverage under the policy, as discussed in more detail below.
 {¶ 4} SuperValu was also a named insured under an umbrella policy issued by defendant Federal. Under Federal's policy, coverage A provides coverage in excess of the underlying insurance ("American's policy"). It states that coverage will not apply until the insured or the insured's underlying insurer is obligated to pay the full amount of the underlying limit. Coverage B provides umbrella liability insurance.
 {¶ 5} SuperValu also provided benefits under a group welfare benefit plan ("the plan"). The plan is self-insured and is governed by the Employee Retirement Income Security Act ("ERISA") of 1974. Blue Cross/Blue Shield of Minnesota ("BCBS") administers the plan. Plaintiff is an eligible dependent under the terms of the plan. The plan has paid benefits totaling $15,680.50 for injuries and losses incurred as a result of the accident at issue.
 {¶ 6} Plaintiff, both individually and as administrator of her husband's estate, filed the instant action against American and Federal alleging that she is entitled to UM/UIM coverage pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. The parties filed cross motions for summary judgment. The trial court granted both American's and Federal's motion. The trial court found that SuperValu executed a valid rejection of UM/UIM coverage under American's policy. Therefore, because no coverage existed under American's policy, no coverage existed under Coverage A of Federal's policy. Further, the trial court found Coverage B of Federal's policy specifically excluded injuries from automobile accidents.
 {¶ 7} Plaintiff also sought declaratory relief that no obligation existed to reimburse SuperValu under the plan until plaintiff, decedent, or any next of kin and beneficiaries were fully compensated for all of their damages complained of in the present action. SuperValu moved for summary judgment. The trial court granted SuperValu's motion finding the language in the plan to be unambiguous, giving the plan the right to reimbursement regardless of whether the parties have been made whole. Plaintiff filed the instant appeal.
 {¶ 8} Plaintiff ("appellant") asserts the following assignments of error:
[1.] The trial court erred to the prejudice of plaintiff-appellant, sherry boerger, in granting summary judgment in favor of defendant-appellee, [american], and denying plaintiff-appellant's motion for summary judgment on her claim for declaratory relief on [american's policy].
[2.] The trial court erred to the prejudice of plaintiff-appellant, sherry boerger, in granting summary judgment in favor of defendant-appellee, [federal], and denying plaintiff-appellant's, motion for summary judgment on her claim for declaratory relief on [federal's policy].
[3.] The trial court erred to the prejudice of plaintiff-appellant, sherry boerger, in granting summary judgment in favor of defendant-appellee, [supervalu], and denying plaintiff-appellant's, motion for summary judgment on her claim for declaratory relief that defendant-appellee may not enforce its alleged subrogation and/or rights of reimbursement until plaintiff-appellant, the estate of her decedent, and/or the next of kin and beneficiaries of her decedent have been fully compensated for all of their damages arising from the motor vehicle collision in question.
 {¶ 9} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 10} In Dresher, the Ohio Supreme Court held that a party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden to inform the trial court of the basis for the motion and identifying the portions of the record demonstrating an absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280. The moving party does not discharge its burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates the nonmoving party has no evidence to support its claims. Id. Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue.Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 11} Subsequent to the proceedings in the trial court and the parties' filing appellate briefs, the Supreme Court of Ohio decided Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, which is dispositive of this appeal. Galatis
limited the application of Scott-Pontzer and held the following:
2. Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. * * *
3. Where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. * * *
Galatis, at paragraphs two and three of the syllabus.
 {¶ 12} The court limited the application of Scott-Pontzer
to an employee who had an accident while he or she was within the course and scope of their employment. Id. The court also overruled Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557. The court limited recovery to family members who were actually named insureds. Id.
 {¶ 13} It is clear that Galatis controls the outcome of this appeal. We find Mr. Boerger was not in the course and scope of his employment when the accident occurred. This fact is evidenced by plaintiff's brief at page 11 which states:
The trial court in the present case erroneously distinguished the Federal umbrella liability policy at issue from the umbrella liability policy considered by the Ohio Supreme Court inScott-Pontzer. However, the Supreme Court's analysis of the umbrella liability policy in Scott-Pontzer is particularly relevant to the ultimate issue in the present case: Whether a commercial umbrella liability policy providing un/underinsured [sic] motorist coverage by operation of law insures employees and their family members injured outside the scope ofemployment. * * *
(Emphasis added.)
 {¶ 14} By appellant's own admission, Mr. Boerger was acting outside the scope of employment at the time of the accident. Therefore, Galatis precludes coverage under American's policy as well as Federal's policy. With respect to Mrs. Boerger,Galatis clearly holds that coverage to family members is limited to those who are actually named as insureds. Mrs. Boerger was not a named insured. Therefore, no coverage exists for Mrs. Boerger under either policy.
 {¶ 15} Appellant asserts four arguments in support of its contention that the Galatis decision should not be applied retrospectively. Those arguments include (1) Chevron Oil Co. v.Huson (1971), 404 U.S. 97, 92 S.Ct. 349, prohibits retrospective application; (2) contractual rights have arisen under prior decisions, therefore the exception contained in Peerless Elec.Co. v. Bowers (1955), 164 Ohio St. 209 applies; (3) principles of stare decisis preclude retrospective application; and (4) retrospective application violates Article I of the Ohio Constitution, Section 16, access to the courts. We reject appellant's arguments.
 {¶ 16} Numerous courts have considered arguments regarding retroactive application of Galatis and such arguments have been consistently rejected. The Supreme Court of Ohio has appliedGalatis to pending cases. See Morrison v. Emerson (2003),100 Ohio St.3d 302. This court has likewise specifically found thatGalatis applies retroactively. Adams v. Osterman, Franklin App. No. 03AP-547, 2004-Ohio-1412; Burt v. Harris, Franklin App. No. 03AP-194, 2004-Ohio-756. Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 17} In the third assignment of error, appellant argues the trial court erred in granting summary judgment to SuperValu and determining it has a right to reimbursement and/or subrogation even if plaintiff has not been fully compensated.[2] We disagree with appellant's position and find the trial court's decision was correct. As stated previously, the plan paid $15,680.50 for injuries and losses incurred as a result of the accident. Based on appellant's recovery from the insurance company, BCBS maintains its right to be reimbursed under the terms of the plan.[3]
 {¶ 18} As an initial matter, the introduction page of the plan states it is self-funded. ERISA governs the establishment, operation, and administration of employee benefit plans, including employer-established plans that provide health care benefits to employees and their beneficiaries. Stephens v.Emanhiser (Aug. 24, 1999), Seneca App. No. 13-99-03. ERISA "preempts state regulatory laws and common-law rules related to self-funded employee benefit plans." Id., citing Marshall v.Employers Health Ins. Co. (6th Cir. Dec. 30, 1997), App. Nos. 96-6063, 96-6112.[4]
 {¶ 19} Under federal common-law, where an ERISA plan's subrogation and/or reimbursement provision is ambiguous as to who has priority over any funds, courts apply the "make-whole" default rule. Marshall v. Employers Health Ins. Co. (6th Cir. Dec. 30, 1997), App. Nos. 96-6063, 96-6112; Copeland Oaksv. Haupt (2000), 209 F.3d 811; Qualchoice, Inc. v. Williams
(6th Cir. June 22, 2001), App. No. 00-3485, 14 Fed.Appx. 417. The make-whole rule provides "that an insurer cannot enforce its subrogation [or reimbursement] rights unless and until the insured has been made whole by any recovery, including any payments from the insurer." Copeland Oaks, 209 F.3d at 814. The rule has been specifically applied to reimbursement provisions as well. Qualchoice, supra (specifically applying the make whole rule to reimbursement provisions); Hiney Printing Co. v.Brantner (6th Cir. 2001), 243 F.3d 956, 959 ("we see no principled reason for treating [subrogation and reimbursement provisions] differently when it comes to the default application of the make-whole rule to ambiguous provisions"). Where a plan is clear and unambiguous, the make-whole rule does not apply. Id. InCopeland Oaks, the Sixth Circuit held that in order for the language of an ERISA plan to conclusively disavow the make-whole rule, it must be clear and specific in establishing priority to the funds as well as a right to any full or partial recovery.Copeland Oaks, supra, at 813-814.
 {¶ 20} Here, the subrogation and reimbursement language is contained in a single provision. The provision states in pertinent part:
IX. REIMBURSEMENT AND SUBROGATION
Upon payment of any benefits under this plan, the Plan reserves the right to be subrogated to your rights, or your dependent(s) rights, or your heirs, guardians, executors or other representatives' rights of recovery from any third party that may be responsible for payment of medical expenses incurred as a result of those injuries. If the Plan pays any benefits and you or your dependent(s) later obtain a recovery, you are obligated under the terms of this Plan to reimburse the Plan for the benefits paid. The Plan will be reimbursed in full beforedamages, regardless of whether you have been fully compensatedfor your damages by any party or insurer alleged to be legallyresponsible to you, including your own automobile or liabilitycarrier, and regardless of whether medical or dental expenses areitemized in a payment or award.
You must cooperate with the Plan in assisting it to protect its legal rights under these subrogation provisions. The Plan maintains both a contractual right of reimbursement and a separate right of subrogation to any funds recovered by you. * * * You acknowledge that the Plan's subrogation andreimbursement rights shall be considered the first priorityclaim against any third party or your own automobile orliability carrier, to be paid before any other claims which mayexist are paid, including claims by you for general damages.
(Emphasis in original.)
 {¶ 21} We find that the language regarding reimbursement is clear and specific in disavowing the make-whole rule. It clearly states that the participant's right to be made whole is superseded by the plan's right to reimbursement. The provision also unequivocally states that its reimbursement interest has first priority and must be paid prior to any other claims, including a claim for general damages. Therefore, the make-whole rule is inapplicable as the reimbursement language is unambiguous.
 {¶ 22} Appellant asserts that the United States Supreme Court case Great West Life Annuity v. Knudson (2002),122 S.Ct. 708, does not allow a plan or plan's administrators to seeklegal relief, namely the imposition of personal liability on its employee's contractual obligation to subrogate and/or reimburse, against a plan participant. Under 29 U.S.C. § 1132(a), a civil action may be brought by certain persons. For example, under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action to recover benefits due under the terms of the plan or to clarify his or her rights to future benefits. An action under this section may be brought in either federal or state court.[5] Under 29 U.S.C. § 1132(a)(3) or § 502(a)(3) of the act, a participant, beneficiary, or fiduciary may bring a civil action: (A) to enjoin any act or practice which violates any provision of the plan; or (B) to obtain other appropriate equitable relief: (i) to redress such violations; or (ii) to enforce any provisions of the subchapter or terms of the plan.
 {¶ 23} In Knudson, the Court interpreted § 502(a)(3). The Court construed the term "equitable relief" to mean those categories of relief which were typically available in equity, i.e. constructive trust, or equitable restitution. Knudson,
supra at syllabus. The court held that petitioners sought to impose "personal liability" on respondents for a contractual obligation to pay money under the plan's reimbursement provision, relief that was not typically available in equity. Id. at 210. The Court held such legal remedies are improper under § 502(a)(3). Where the property or money sought has been dissipated so that no property remains and plaintiff's claim is merely that of a general creditor, the plaintiff is seeking to impose personal liability on the defendant and the action is a legal one. Id. at 213-14. In contrast, where the property identified as belonging in good conscience to the plaintiff can clearly be traced to particular funds or property in the defendant's possession, an action at equity may be brought. Id. at 215-16.
 {¶ 24} In this case, appellant's argument that Knudson
controls the issue of the plan's reimbursement is misplaced. The only determination the trial court made was whether the language of the plan gives BCBS a right to reimbursement. To this court's knowledge, BCBS has not yet initiated any action against appellant to recover the money. If and when it does, the federal court maintains exclusive jurisdiction over the action. Therefore, Knudson does not mandate reversal of the trial court's determination. Further, based on the above discussion, we similarly find that the language of the plan gives BCBS a right to reimbursement. Accordingly, appellant's third assignment of error is overruled.
 {¶ 25} Accordingly, appellant's first, second, and third assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 Bryant and Brown, JJ., Concur.
[1] Mr. Davis was insured under a policy of automobile liability insurance issued by Republic Mutual Insurance Company providing bodily injury coverage of $12,500 each person/$25,000 each occurrence. Republic tendered $25,000. Nationwide Property and Casualty Company provided UM/UIM coverage to plaintiff. Nationwide did not consent to the settlement but substituted its payment of $25,000 in order to preserve its reimbursement/subrogation rights against Mr. Davis. Republic, Nationwide, and Davis are not part of this appeal.
[2] As stated above, appellant initiated an action in the trial court for a declaratory judgment against SuperValu, BCBS, and Nationwide declaring that they may not enforce their alleged subrogation and/or reimbursement rights until she has been made whole. SuperValu moved for summary judgment arguing that appellant was not entitled to such declaration.
[3] On page 8 of SuperValu's brief, it states "In the case at bar, it is the Plaintiffs' right to reimbursement under the Plan document that is at issue." However, the word plaintiff should be Blue Cross Blue Shield of Minnesota (BCBS), the plan. Therefore, we will address the plan's right to reimbursement under the Plan and not subrogation.
[4] Appellant does not challenge on appeal the trial court's finding that ERISA applies to the interpretation of the plan.
[5] 29 U.S.C.A. § 1132(e)(1), state courts of competent jurisdiction and district courts of the United States have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a).