# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 1, 2005        Decided August 29, 2006

No. 04-7121

WILLIAM MOORE,
INDIVIDUALLY AND AS PARENTS AND GUARDIANS
OF ALISTAIRE MOORE;
JUDITH MOORE,
INDIVIDUALLY AND AS PARENTS AND GUARDIANS
OF ALISTAIRE MOORE,
APPELLANTS

v.

CAPITALCARE, INC. *ET AL.*,
APPELLEES

———

No. 04-7122

WILLIAM MOORE,
INDIVIDUALLY AND AS PARENTS AND GUARDIANS
OF ALISTAIRE MOORE;
JUDITH MOORE,
INDIVIDUALLY AND AS PARENTS AND GUARDIANS
OF ALISTAIRE MOORE, *ET AL.*
APPELLEES

v.

CAPITALCARE, INC. *ET AL.*,
APPELLANTS

———

Appeals from the United States District Court
for the District of Columbia
(No. 94cv01326)

———

*Martin H. Freeman* argued the cause for the appellants/cross-appellees.

*Jacqueline Marie Saue* argued the cause for the appellees/cross-appellants. *Charles J. Steele* entered an appearance.

Before: HENDERSON, *Circuit Judge*, and Edwards[*] and WILLIAMS, *Senior Circuit Judge*s.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Alistaire Moore, the daughter of William and Judith Moore (collectively, Moores), was severely injured in an automobile accident and as a result required extensive medical care. She is the beneficiary of a health insurance plan administered by CapitalCare, Inc. and Blue Cross & Blue Shield of the National Capital Area (BCBS) (collectively, CC/BCBS). CC/BCBS paid over $200,000 in accident-related benefits on Alistaire's behalf. Alistaire also recovered a $1.3 million settlement for her injuries from a personal injury lawsuit. In 1994, the Moores instituted this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, alleging that

———

[*]Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

CC/BCBS failed to pay benefits due under the plan. CC/BCBS countersued under ERISA, claiming that, pursuant to a subrogation clause in the plan, it was entitled to reimbursement because Alistaire received compensation from a third party for her injuries. The district court awarded the Moores $72,083.52 in unpaid benefits, awarded CC/BCBS an equitable lien of $194,274.72 against the settlement funds and denied both parties' motions for prejudgment interest and attorney's fees. The Moores appeal the grant of the equitable lien against the settlement proceeds claiming that, because Alistaire was not "made whole" for her injuries, CC/BCBS are not entitled to reimbursement. We disagree, concluding that Alistaire's health insurance plan expressly provides for reimbursement in the event of partial recovery from a third party. Both the Moores and CC/BCBS appeal the denial of prejudgment interest and attorney's fees, which we reverse and remand as to all parties.

I.

In 1991, the Moores purchased a group benefit plan (ERISA plan) from BCBS and its wholly-owned subsidiary, CapitalCare. The ERISA plan included various contracts that together provided "dual option coverage." The ERISA plan's dual option coverage allowed an insured to seek medical attention at his option either from the HMO side through CapitalCare or from the indemnity side through BCBS. The ERISA plan also included a subrogation clause, by which an injured beneficiary agreed to reimburse CC/BCBS for medical expenses the ERISA plan paid if he recovered compensation from a third party for his injuries.[1]

---

[1]The subrogation clause provides as follows:

12. Subrogation . . . .

a. To the extent that benefits for covered services are provided or paid under this Contract, the

On September 10, 1992, Alistaire Moore sustained life-threatening injuries when the chauffeured car in which she was a passenger crashed. Her resulting medical care was lengthy and expensive. She is a beneficiary under the ERISA plan. After several years of wrangling with CC/BCBS over Alistaire's healthcare expenses, the Moores initiated this lawsuit against CC/BCBS in 1994.[2] The suit, brought under section

> Corporation shall be subrogated and succeed to any rights of recovery of a Participant for expenses incurred against any persons or organizations except insurers on policies of health insurance issued to and in the name of the Participant.
>
> b. The Participant shall pay the Corporation all amounts recovered by suit, settlement, or otherwise from any third party or his insurer to the extent of the benefits provided by this Contract.
>
> c. Attorneys's [sic] fees, court costs, and any other costs expended in the course of securing recovery by suit, settlement, or otherwise, shall be subtracted from the amount to be paid to the Corporation; the amount to be subtracted shall be as follows:
>
>> (1) If the case is settled out of court--one-quarter of the amount of benefits paid or to be paid for covered services; or
>>
>> (2) If the case is settled as a result of litigation--one third of the amount of benefits paid or to be paid for the covered services.

*Moore v. CapitalCare, Inc.*, 70 F. Supp. 2d 9, 38 (D.D.C. 1999).

[2]The Moores initially sued only CapitalCare; BCBS was later joined as a party-defendant pursuant to Federal Rule of Civil

502(a)(1)(B) of ERISA, *see* 29 U.S.C. § 1132(a)(1)(B),[3] sought unpaid benefits allegedly due under the ERISA plan.

During discovery, CC/BCBS learned that Alistaire had obtained a $1.3 million settlement from a personal injury suit that was filed on her behalf against the chauffeur and his insurers. CC/BCBS believed that the proceeds of the settlement were held in an irrevocable trust for the benefit of Alistaire M. Moore (Trust) with Judith Deitz as the named trustee.[4] CC/BCBS then filed a counterclaim against the Moores, asserting their subrogation claim. CC/BCBS also filed a third party complaint against Alistaire M. Moore, the Trust and Judith Deitz Moore as trustee, seeking reimbursement for the benefits they had paid for Alistaire's care. The Moores never responded to CC/BCBS's counterclaim. The third party defendants admitted that the Trust had been created with and/or contained funds from the settlement. Pls.' Answer to Third Party Compl. ¶ 3, reprinted at Supplemental Appendix (SA) 124.

Following a bench trial, the district court concluded that CC/BCBS had failed to pay the Moores benefits due under ERISA but that CC/BCBS also had a subrogation right to the settlement proceeds to the extent they had paid benefits to Alistaire or on her behalf. *See Moore v. CapitalCare, Inc.*, 70 F. Supp. 2d 9 (D.D.C. 1999). Thereafter, the Moores moved for

---

Procedure 19.

[3]Section 502(a)(1)(B) authorizes a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[4]Deitz is apparently the maiden name of Judith Moore. She is referred to as Judith Deitz Moore in the Third Party Complaint. *See* 3d Party Compl. ¶ 3.

reconsideration of the subrogation ruling, which motion the court denied. *See Moore v. CapitalCare, Inc.*, No. 94-1326 (D.D.C. June 1, 2000). The court also ordered an accounting to determine the amount each party was due. *See id.* Following the accounting, the Moores first claimed that the settlement proceeds had dissipated and therefore could not be subject to an equitable lien. Pls.' Reply Mem. in Supp. of Pls.' Mot. for Recons. on Issue of Reimbursement/Subrogation ¶ 7, R. Doc. No. 200. CC/BCBS moved for another accounting. Defs.' Mot. for Accounting & Declaratory & Equitable Remedies under Section 502(a)(3) of ERISA & Mem. of P. & A. in Supp. Thereof, R. Doc. No. 204. Without addressing the Moores' dissipation claim, the court directed CC/BCBS to pay the Moores $72,083.52 due under the ERISA plan and granted CC/BCBS an equitable lien "in the amount of $194,274.72 upon the proceeds of any recovery from any third party by reason of the injury to Alistaire Moore that is the subject of this action in aid of defendants' subrogation rights under ERISA." *Moore v. CapitalCare, Inc.*, No. 94-1326, slip op. at 1–2 (D.D.C. July 20, 2004). It also denied without prejudice CC/BCBS's motion for a second accounting as well as all parties' petitions for prejudgment interest and attorney's fees. *Id.* The Moores appeal the reimbursement award,[5] arguing that CC/BCBS's subrogation claim is legal, not equitable, and therefore barred by ERISA and, alternatively, that CC/BCBS are not entitled to reimbursement because Alistaire was not "made whole" by her settlement. The Moores also appeal the denial of their petitions for prejudgment interest and attorney's fees. CC/BCBS cross-appeal, similarly arguing that they are entitled to prejudgment

---

[5]The third party defendants, Alistaire Moore, the Trust and Judith Deitz Moore as trustee, do not appeal and thus are the appellees here.

interest and attorney's fees.[6]

## II.

## A.

We turn first to the Moores' challenge of the district court's subrogation ruling. Originally, the Moores had argued that the award was improper under ERISA section 502(a)(3), *see* 29 U.S.C. § 1132(a)(3), because CC/BCBS seek legal relief, not the "other appropriate equitable relief" authorized therein. ERISA section 502(a)(3) authorizes the ERISA plan fiduciary "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." *Id.* (emphasis added).

At the time of oral argument on November 1, 2005, the circuits were split regarding an ERISA fiduciary's subrogation right under section 502(a)(3).[7] Shortly after oral argument, the

---

[6]CC/BCBS also appeal the denial of their motion for an accounting. Appellees' Br. 35–37. They argue that an accounting is warranted in light of the Moores' continued insistence that the settlement funds were "never segregated" and have "long since been dissipated," Reply Mem. in Supp. of Pls.' Mot. for Recons. on Issue of Reimbursement/Subrogation ¶¶ 7–8, R. Doc. No. 200—claims the Moores continue to press on appeal, *see* Appellants' Br. 21–22 & n.9; Appellants' Reply Br. at 5–6. After oral argument, the Moores deposited $210,000 into the district court registry and stipulated that, if they lose on appeal, CC/BCBS may collect from the registry. Pls.' Opp'ns to Defs.' Mot. for Recons., Mot. for Prelim. Inj., & Mot. for Hr'g ¶ 1–2, R. Doc. No. 255.

[7]The United States Supreme Court has thrice interpreted the meaning of "appropriate equitable relief" as used in section 502(a)(3): first, in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), then, in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204

(2002), and, most recently, in *Sereboff v. Mid Atlantic Medical Services*, *LLC*, 126 S. Ct. 1869 (2006). In *Mertens*, the Court determined that " '[e]quitable' relief " as used in section 502(a)(3) "must mean *something* less than *all* relief" and thereby rejected a reading of the language that included all relief a court of equity was authorized to award in a given case. 508 U.S. at 258 n.8 (emphasis in original). Instead, the Court determined that " 'equitable relief' " embraced only "those categories of relief that were *typically* available in equity," *id.* at 256 (emphasis in original), such as "injunction or restitution," *id.* at 255.

In *Knudson*, the Court distinguished equitable claims for restitution—embraced by section 502(a)(3)—and legal claims for restitution—not embraced by section 502(a)(3). In a claim for equitable restitution, the plaintiff may obtain "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. The defendant in *Knudson* had received a settlement from a tort suit and, as required by California law, placed the settlement funds in a trust with an independent trustee. The plaintiff insurer then brought suit under section 502(a)(3). Because the funds were no longer in the defendant's possession, "the plaintiff '[could not] enforce a constructive trust of or an equitable lien upon other property of the [defendant].' " *Id.* at 213–14. The plaintiff thus sought a *legal* remedy—the defendant's obligation to pay a sum of money to which the plaintiff was owed—and could not maintain suit under section 502(a)(3). *See id.* at 210.

After *Knudson*, the circuits split over whether a fiduciary could enforce a subrogation provision under section 502(a)(3). The Fourth, Fifth, Seventh, Eighth and Tenth Circuits decided that if a plaintiff's request for reimbursement under ERISA section 502(a)(3) did not seek to impose personal liability but instead sought relief (such as a constructive trust or equitable lien) against identifiable funds in the actual or constructive possession of the insured, the relief was equitable in nature and therefore permitted under section 502(a)(3). *See Mid Atlantic Med. Servs., Inc. v. Sereboff*, 407 F.3d 212, 217–21

United States Supreme Court granted certiorari in *Mid Atlantic Medical Services*, *LLC v. Sereboff*, 407 F.3d 212 (4th Cir.). In that case, the Sereboffs, beneficiaries of a health insurance plan administered by Mid Atlantic Medical Services obtained a settlement from a third party for injuries they sustained in an accident. Mid Atlantic brought suit under section 502(a)(3) seeking reimbursement pursuant to the "Acts of Third Party" provision of the Sereboffs' ERISA plan, under which the Sereboffs agreed to reimburse Mid Atlantic for medical expenses the latter paid if they recovered from a third party for their injuries. The district court found in favor of Mid Atlantic. The Sereboffs appealed and the Fourth Circuit affirmed,

---

(4th Cir. 2005) ("We agree with the district court that, in this dispute, MAMSI's action seeks equitable restitution, as that term is used in *Knudson*, because MAMSI seeks to recover funds that are specifically identifiable, belong in good conscience to MAMSI, and are within the possession and control of the Sereboffs."), *aff'd*, 126 S. Ct. 1869 (2006); *N. Am. Coal Corp. v. Roth*, 395 F.3d 916, 917 (8th Cir. 2005) (plaintiff stated claim under 29 U.S.C. § 1132(a)(3) and district court properly imposed constructive trust on overpaid benefits, permanently enjoined defendants from disposing of or transferring funds in their possession and required tracing of funds no longer in defendants' possession); *Admin. Comm. of Wal-Mart Assocs.'Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1120, 1125 (10th Cir. 2004) (action seeking injunction, declaration of rights, constructive trust and equitable restitution was equitable in nature as in *Great-West*, even though defendant never had disputed funds in his possession); *Bombardier Aerospace Employee Welfare Benefits Plan*, 354 F.3d 348, 358 (5th Cir. 2003); *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680, 687–88 (7th Cir. 2003); *Bauhaus USA*, *Inc. v. Copeland*, 292 F.3d 439, 445 (5th Cir. 2002). The Sixth and Ninth Circuits, by contrast, found that any attempt by an insurer to enforce a subrogation clause was a request for reimbursement which constituted legal relief. *See Qualchoice*, *Inc. v. Rowland*, 367 F.3d 638, 650 (6th Cir. 2004); *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164 (9th Cir. 2002).

concluding that Mid Atlantic sought equitable restitution.

The High Court affirmed the Fourth Circuit. It first considered whether the type of relief Mid Atlantic sought was equitable or legal. *See Sereboff v. Mid Atlantic Med. Servs., LLC*, 126 S. Ct. 1869, 1873–74 (2006). The Court determined that Mid Atlantic sought an "equitable lien," properly characterized as equitable because the funds were specifically identifiable and remained in the possession and control of the Sereboffs. *Id.* at 1874. The Court next analyzed whether the basis for Mid Atlantic's claim was equitable, applying " 'the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.' " *Id.* at 1875 (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)) (alteration in *Sereboff*). The Court found that the " 'Acts of Third Parties' provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets—'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)'—and a particular share of that fund to which Mid Atlantic was entitled—'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.' " *Id.* (alteration in original) (citation omitted). Mid Atlantic therefore "could rely on a 'familiar rul[e] of equity' to collect for the medical bills it had paid on the Sereboffs' behalf." *Id.* (citing *Barnes*, 232 U.S. at 121) (alteration in original). We then *sua sponte* ordered the parties to address the implications of *Sereboff*.[8] *See Moore v. CapitalCare, Inc.*, No. 04-7121 (D.C.

---

[8]The order reads:

It is ORDERED, on the court's own motion, that the parties submit supplemental briefs addressing the following questions.

1. The District Court awarded CapitalCare and BCBSNCA "an equitable lien in the amount of $194,274.72

Cir. June 22, 2006). In their supplemental brief submitted in response, the Moores dropped their section 502(a)(3) challenge to CC/BCBS's subrogation claim because "the *Sereboff* Court has made the decision that, where the fund is identifiable, the remedy is equitable." Appellants' Supplemental Br. 3.

We therefore turn to the Moores' only remaining challenge to the subrogation ruling: that CC/BCBS are not entitled to reimbursement because Alistaire has not been made whole by the settlement. The Moores urge us to adopt, as a matter of federal common law, the make whole doctrine as a default rule

---

upon the proceeds of any recovery from any third party by reason of the injury to Alistaire Moore that is the subject of this action in aid of [CapitalCare and BCBSNCA's] equitable subrogation rights under ERISA." Appellants' Appx. at 69. This decision has been appealed by William Moore and Judith Moore, individually and in their capacities as parents and guardians of Alistaire Moore, but *not* by the Irrevocable Trust between Alistaire M. Moore, Grantor, and Judith Deitz, Trustee, *nor* by Judith Deitz in her capacity as trustee of that trust. What are the implications of the identities of the appellants for CapitalCare and BCBSNCA's subrogation claim under ERISA § 502(a)(3), particularly in light of the Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services, LLC*, 126 S. Ct. 1869 (2006)?

2. Apart from the question above, does *Sereboff* have any other implications for CapitalCare and BCBCNCA's subrogation claim under ERISA § 502(a)(3)?

3. What evidence is there in the record of the disposition of the proceeds of the settlement of the tort action in the Circuit Court for Baltimore County?

*Moore v. CapitalCare, Inc.*, No. 04-7121 (D.C. Cir. June 22, 2006) (emphases in original).

of construction.[9] Appellants' Suppl. Br. at 4. The make whole doctrine is an equitable insurance law principle and can be summarized as follows:

> [*I*]*n the absence of* contrary statutory law or
> *valid contractual obligations to the contrary*, the

---

[9]In *Sereboff*, the defendants asserted the make whole doctrine as an equitable defense but the Supreme Court rejected it, finding the defense inapplicable and noting:

Mid Atlantic's action to enforce the "Acts of Third Parties" provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by our decision in *Barnes*. Mid Atlantic need not characterize its claim as a freestanding action for equitable subrogation. Accordingly, the parcel of equitable defenses the Sereboffs claim accompany any such action are beside the point.

*Sereboff*, 126 S. Ct. at 1877 (internal citations omitted). The Sereboffs also argued that the relief Mid Atlantic sought was not "appropriate" within the meaning of section 502(a)(3)'s because it contravened the make whole doctrine. The Court declined to address the latter argument because the Sereboffs had not raised it earlier in the suit. *See id.* at 1877 n.2.

In their supplemental brief, the Moores claim that their make whole doctrine argument is similar to the Sereboffs' second argument—that is, CC/BCBS's claim is not "appropriate" because Alistaire was not made whole—and thus *Sereboff* is not dispositive. Appellants' Suppl. Br. at 4. CC/BCBS respond that, in the district court, the Moores argued only the make whole doctrine as an equitable defense and thus *Sereboff* forecloses that argument. Appellees' Suppl. Br. at 5–6. They also contend that, as in *Sereboff*, the Moores waived the assertion that the equitable lien was not *appropriate* equitable relief. We need not decide the waiver issue because even assuming the Moores preserved the issue on appeal CC/BCBS are nonetheless entitled to reimbursement.

> general rule under the doctrine of equitable subrogation is that where an insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights. The rule applies as well to instances in which the insured has recovered from the third party and the insurer attempts to exercise its subrogation right by way of reimbursement against the insured's recovery.

16 Lee R. Russ et. al, *Couch on Insurance* § 223:134 (3d ed. 2000) (footnotes omitted) (emphasis added). At least three circuits have adopted the make whole doctrine into federal common law as a default rule. *See, e.g.*, *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) ("In *Marshall,* we adopted the so-called 'make whole' rule of federal common law, which requires that an insured be made whole before an insurer can enforce its right to subrogation under ERISA, unless there is a clear contractual provision to the contrary. . . . Also, the make-whole rule is merely a default rule. If a plan sets out the extent of the subrogation right or states that the participant's right to be made whole is superseded by the plan's subrogation right[,] no silence or ambiguity exists." (alterations in original) (citation omitted)); *Cagle v. Bruner*, 112 F.3d 1510, 1521–22 (11th Cir. 1997) ("We hold today that the make whole doctrine is a default rule in ERISA cases."); *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1394–95 (9th Cir. 1995) ("We would not apply the interpretive 'make-whole rule' as a 'gap-filler' if the subrogation clause in the Plan document specifically allowed the Plan the right of first reimbursement out of any recovery Barnes was able to obtain even if Barnes were not made whole. The

clause, however, contains no such language."); *see also Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001) ("We therefore find the reimbursement provision ambiguous because it is silent as to whether the right of reimbursement applies to partial recovery, and accordingly, the make-whole rule applies."). Other circuits have declined to do so. *See, e.g., Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 280–81 (1st Cir. 2000) (declining to adopt make whole doctrine because it conflicts with policy objectives of ERISA); *In re Paris v. Iron Workers Trust Fund*, No. 99-1558, 2000 WL 384036 (4th Cir. 2000) (same); *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir. 1997) (declining to adopt make whole doctrine because it does not comport with employee benefit plans); *see also Sunbeam-Oster Co. Group Benefits Plan for Salaried & Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1377 (5th Cir. 1996) ("[W]e shall supply a default rule only when the necessary rule has not been supplied by the plan, the law, or the parties through their agreements.").

It is undisputed that the $1.3 million settlement did not fully compensate Alistaire for her injuries. Nevertheless we need not decide whether to adopt the make whole doctrine as a default rule because the ERISA plan unambiguously establishes a plan priority to any third party recovery the beneficiary obtains regardless whether the beneficiary has been made whole by the recovery.[10] Subsection "a" of the subrogation provision

---

[10]The Moores do not argue that the subrogation provision is ambiguous nor do they challenge the district court ruling that "[t]he Plan provisions, when read in context, can only mean that the Plan is entitled to be reimbursed by the beneficiary all amounts that the Plan has paid to the beneficiary, or on her behalf, to the full extent that the beneficiary recovers from another source." *Moore*, 70 F. Supp. 2d at 39. They argue instead that we should adopt the make whole doctrine as a matter of substantive federal common law, apparently without

provides the ERISA plan "shall . . . succeed to *any rights of recovery of a Participant*" and subsection "b" provides that the "Participant shall pay the Corporation *all amounts* recovered by suit, settlement, or otherwise from any third party or his insurer *to the extent of the benefits provided by this Contract*." *See Moore*, 70 F. Supp. 2d at 38 (emphases added). We believe that this language plainly entitles CC/BCBS to recover from the Moores all amounts the ERISA plan has paid to Alistaire or on her behalf to the extent that she has recovered from a third party.

Some circuits have interpreted similar language sufficiently unambiguous to override the default make whole doctrine. For example, in *Sunbeam-Oster Co.*, the Fifth Circuit found unambiguous a provision stating " '[s]ubrogation allows the Plan to recover duplicate benefit amounts . . . .,' and added by way of explanation that, '[i]f the plan has already paid benefits, it has the right to recover payment from you.' " 102 F.3d at 1375 (alteration in original). Because the *Sunbeam-Oster Co.* provision was unambiguous, the Fifth Circuit declined to expressly accept or reject the make whole doctrine, noting: "we have serious doubts whether we would ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary under circumstances such as the ones we consider today." *Id.* at 1378. In *Fields v. Farmers Insurance Co.*, the Tenth Circuit reviewed a provision which provided, inter alia: " 'If you or your dependent sustain an injury caused by a third party, the Plan will pay for the injury, subject to[ ] the Plan being subrogated to any recovery or any right of recovery you or your dependent has against that third

reference to its having been applied as a default rule only. *See* Appellants' Supplemental Br. 5 ("Under these undisputed facts [that Alistaire was not fully compensated for her injuries], the case law appears clearly to support the application of the Make-Whole Doctrine.").

party, including the right to bring suit in your name.' " 18 F.3d 831, 835 (10th Cir. 1994).[11] The court noted, "Here, the clear language of the insurance contract provides that [the insurance company] shall be subrogated to *any* recovery that plaintiff receives from the negligent third party or its insurer" and accordingly held that the contract contained a "clear and unambiguous" "modif[ication] [of] general common law principles [that is, the make whole doctrine] that would apply absent express contractual provisions." *Id.* at 836 (emphasis in original).[12]

Moreover, even if we found the subrogation language

---

[11]*Fields* involved an Oklahoma state insurance law claim and was in federal court under diversity jurisdiction. The Tenth Circuit applied Oklahoma state law, which adopted the make whole doctrine as a default rule of construction.

[12]There is some conflict among the circuits regarding how clear a subrogation provision must be to supersede the default make whole doctrine. At least two courts have found similar provisions ambiguous because they did not contain an express disavowal of the make whole doctrine. *See, e.g.*, *Copeland Oaks*, 209 F.3d at 813 ([I]n order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery." (emphases in original)); *Cagle*, 112 F.3d 1521–22 ("An ERISA plan overrides the make whole doctrine only if it includes language 'specifically allow[ing] the Plan the right of first reimbursement out of any recovery [the participant] was able to obtain even if [the participant] were not made whole.' " (citation omitted)). We do not agree that the "absence of separate, specifically articulated rules for situations of partial recovery and total recovery with variations depending on the nature of the source of recovery" is always ambiguous. *See Sunbeam-Oster Co.*, 102 F.3d at 1376. Rather, as with the provisions here, the silence may "signif[y] nothing more than that, regardless of source, the rule is the same for total and partial recoveries." *Id.*

ambiguous, that would not end the matter. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the administrator/fiduciary has discretion, the *Firestone* Court has described the standard of review as "abuse of discretion" and "arbitrary and capricious." *See id.* at 111–15. We have described the standard as one of " 'reasonableness,' " *Wagener v. SBC Pension Benefit Plan-Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005) (quoting *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992)). Other courts apply a similar standard of review in an ERISA suit brought by a fiduciary to enforce a subrogation provision. *See Sunbeam-Oster Co.*, 102 F.3d at 1373 ("Federal courts have consistently applied *Firestone*'s deference principles to actions concerning benefit determinations brought not only by participants but also by ERISA plans and, in particular, claims involving ERISA plans' assertions of purported reimbursement and subrogation rights."); *see also Harris*, 208 F.3d at 277 n.3; *Cagle*, 112 F.3d at 1516–17; *Barnes*, 64 F.3d at 1392; *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295–96 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993); *Baxter ex. rel. Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir. 1989). Here, the ERISA plan vests the administrator with the authority to make eligibility determinations and to construe the ERISA plan's terms. *Compare Moore*, 70 F. Supp. 2d at 20 (Plan administrator, CapitalCare, " 'has full discretionary authority to operate and administer the terms of [the] health benefits program . . . determination(s) as to . . . eligibility for coverage and/or benefits shall be final and binding, subject to your right of appeal . . . .' " (quoting Pls.' Ex. 2, p. 55) (alterations in original)), *with Block*, 952 F.2d at 1453 n.4 ("Thus, § 7.7(a) (power to 'interpret and construe' the plan)

*or* § 7.4 (power to make 'final and binding' decisions) of the Pitney Bowes Plan, standing alone, would probably meet the *Firestone* test for deferential review." (emphasis in original)). Accordingly, we will uphold CapitalCare's—the administrator's—interpretation of the ERISA plan's subrogation clause unless it is an abuse of discretion. In *Cutting*, the Seventh Circuit interpreted an analogous provision which "state[d] rather flatly that the plan shall be subrogated to 'all claims' by the covered individual against a third party to the extent of 'any and all payments' made (or to be made) by the plan." 993 F.2d at 1299. Although the court found the language ambiguous, it applied the same deferential standard of review it uses if the plan vests the administrator with discretion; it could not "say that the company was *unreasonable* in interpreting this plan as disclaiming the make-whole principle." *Id.* (emphasis in original). So too here. CC/BCBS's interpretation of the subrogation provision to apply to Alistaire's partial recovery is reasonable and we therefore affirm the district court's award to them of an equitable lien of $194,274.72 against the settlement funds.[13]

## B.

The Moores claim that the district court abused its discretion in denying them prejudgment interest on the award of $92,083.52 in unpaid benefits against CC/BCBS. ERISA does

---

[13]We need not address further our *sua sponte* questions to the parties, *see supra* note 8, especially Question No. 3, in view of the fact that the Moores have now deposited $210,000 in the district court registry and have stipulated that CC/BCBS may collect from that fund if they prevail on appeal. *See supra* note 6. "[T]he implications of the identities of the appellants," as noted in Question No. 1, *see supra* note 8, are no longer relevant because the Moores have dropped their section 502(a)(3) challenge to the subrogation ruling. *See* Appellants' Supplemental Br. 3.

not expressly provide for prejudgment interest. In enacting ERISA, however, the Congress intended the courts to develop a body of federal law " 'to deal with issues involving rights and obligations under private welfare and pension plans.' " *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) (quoting 120 Cong. Rec. 29,942 (1974) (statement of Sen. Javits)). Other circuits have held that a beneficiary may seek prejudgment interest in a suit to recover ERISA benefits due. *See Fotta v. Trustees of United Mine Workers of Am.*, *Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir. 1998) ("It is of considerable moment that we have previously recognized that a beneficiary may seek prejudgment interest in a suit to recover [ERISA] benefits due, notwithstanding the lack of an express directive from Congress to that effect."); *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991) ("The award of prejudgment interest for a federal law violation is governed by federal common law. . . . The growing recognition of the time value of money has led this court to rule that prejudgment interest should be *presumptively* available to victims of federal law violations." (quotation marks omitted)). We believe that a beneficiary's "recover[y] [of] benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), includes not only the benefits withheld but also their time value. *See, e.g.*, *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 207–08 (3d Cir. 2004) ("We now make explicit that . . . an ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award."); *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir.1998) ("Awards of prejudgment interest pursuant to § 1132(a)(1)(B), however, are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her.").

We agree with the circuits that have held that prejudgment interest on unpaid ERISA benefits is *presumptively* appropriate. *See, e.g.*, *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820

(7th Cir. 2002) (presumption of prejudgment interest in ERISA case); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 131 (3d Cir. 2000) (same); *U.S. Indus.*, *Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256–58 (10th Cir. 1988) (same); *Stroh Container Co. v. Delphi Indus.*, *Inc.*, 783 F.2d 743, 752 (8th Cir. 1986) (same). The presumption in favor of prejudgment interest has three recognized bases. First, to permit the fiduciary to retain the interest earned on wrongfully withheld benefits would amount to unjust enrichment—a fiduciary would benefit from failing to pay ERISA benefits. *See Fotta*, 165 F.3d at 212 ("To allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment." (internal quotation marks omitted)). Second, prejudgment interest ensures that a beneficiary is fully compensated, including for the loss of the use of money that is his. *See Holmes*, 213 F.3d at 132; *Short v. Cent. States*, *Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir. 1984). Finally, prejudgment interest promotes settlement and deters any attempt to benefit unfairly from inevitable litigation delay. *See Gen. Facilities*, *Inc. v. Nat'l Marine Serv.*, *Inc.*, 664 F.2d 672, 674 (8th Cir. 1981). Prejudgment interest, therefore, should be denied only if exceptional circumstances—a claimant's bad faith, dilatoriness or frivolous claim—make the award unfair. *See Stroh Container*, 783 F.2d at 752 ("Thus, prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable. Such circumstances may include bad faith or dilatoriness by the claimant, or a claimant's assertion of frivolous claims." (internal citations omitted)).

We believe the district court abused its discretion in denying the Moores prejudgment interest on the $72,083.52 in unpaid benefits it awarded them. Although CC/BCBS claim that the Moores exhibited bad faith by failing to supplement their responses to interrogatories, discovery matters are more appropriately dealt with under Federal Rule of Civil Procedure

37 and, in any event, do not make an award of prejudgment interest inequitable.

CC/BCBS also claim that the district court erred in denying them prejudgment interest on the value of their equitable lien. Because a fiduciary may seek only "appropriate equitable relief," 29 U.S.C. § 1132(a)(3), CC/BCBS's ability to obtain prejudgment interest turns on whether their claim is fairly characterized as seeking equitable relief. We believe that it is. The Supreme Court in *Knudson* explicitly recognized that an accounting for profits—whereby a party that obtains a constructive trust may also "recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered"—is "a form of equitable restitution." *Knudson*, 534 U.S. at 214 n.2. An accounting for profits "is a restitutionary remedy based upon avoiding unjust enrichment" and its purpose is to "disgorge gains received from improper use of the plaintiff's property or entitlements." 1 Dan B. Dobbs, *Law of Remedies* § 4.3(5) (2d ed.1993). CC/BCBS, having obtained an equitable lien on the settlement funds, are also entitled to prejudgment interest thereon.

## C.

We finally consider each side's claim that it is entitled to attorney's fees. ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Eddy v. Colonial Life Insurance Co. of America*, we laid out five factors the district court is to weigh in determining whether or not attorney's fees are appropriate in an ERISA case: "(1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved;

and (5) the relative merits of the parties' positions." 59 F.3d 201, 206 (D.C. Cir. 1995). We review the district court's determination for abuse of discretion. *See id.* at 203. The district court denied each party an award of attorney's fees without explanation, much less discussion of the *Eddy* factors. As we have recently noted, "[m]eaningful review requires us to evaluate the district court's rationale for its holding." *Davy v. Central Intelligence Agency*, No. 05-5151, 2006 WL 1889141, *5 (D.C. Cir. July 11, 2006) (citing *Copeland v. Marshall*, 641 F.2d 880, 901 n.39 (D.C. Cir. 1980) (en banc) ("It is axiomatic that we cannot identify an unreasonable award [of attorney's fees] unless it is accompanied by a statement of reasons.")). "If the district court fails to articulate the basis for its attorney fee decision," as it has here, "we believe remand for adequate explanation of its reasoning is in order." *Id.* (citing *Copeland*, 641 F.2d at 901 n.39 ("[A] remand may be necessary where the District Court awards a fee without adequately articulating underlying reasons.")).

For the foregoing reasons, we affirm the district court's grant to CC/BCBS of "an equitable lien in the amount of $194,274.72 upon the proceeds of any recovery from any third party by reason of the injury to Alistaire Moore," *see Moore*, No. 94-1326, slip op. at 1–2 (D.D.C. July 20, 2004), reverse the denial of prejudgment interest and attorney's fees to both sides and remand for further proceedings consistent with this opinion.

*So ordered.*