KAREN LECRAET HENDERSON, Circuit Judge,
dissenting in part:
While we all agree that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., does not allow the plaintiffs to recover attorneys’ fees in their suit against the Pension Benefit Guaranty Corporation (PBGC), see Opinion of Judge Brown (Brown Op.) at 441^42; Opinion of Judge Kavanaugh (Kavanaugh Op.) at 443 n. 1, I also believe that they are not entitled to recoup forty-five days’ interest for the delayed payment of their lump sum benefits. Accordingly, I dissent in part.
The actuarial equivalence requirement set forth in 29 U.S.C. § 1054(c)(3) is “clear,” Kavanaugh Op. at 443, and requires a lump sum payment to be “ ‘worth at least as much as’ ” an annuity commencing at the normal retirement age, Brown Op. at 439^40 (quoting Esden v. Bank of Boston, 229 F.3d 154, 163 (2d Cir.2000), cert. dismissed, 531 U.S. 1061, 121 S.Ct. 674, 148 L.Ed.2d 652 (2001)) — which annuity, under the U.S. Airways plan, becomes due on the “Benefit Commencement Date,” the first day of the month following the pilot’s sixtieth birthday. Moreover, Judge Brown and I agree that as long as the lump sum benefit is equivalent to the present value of a pilot’s retirement benefit calculated as of his Benefit Commeneement Date, payment may be “reasonably delayed” without running afoul of the actuarial equivalence rule. Brown Op. at 440-41. Any other interpretation could impose a daunting administrative burden on a pension plan administrator, requiring interest to be paid or benefits to be recalculated for even the slightest delay in payment — including, for instance, the time it takes for a pension check to travel through the mail. As Judge Brown notes, the Internal Revenue Service (IRS) — “one of the agencies charged with administering ERISA,” Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 918 (2d Cir.1987), cert. denied, 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988) — sensibly avoids this burdensome result by creating an exemption for a reasonable delay in payment. Brown Op. at 440 — 41; see 26 C.F.R. § 1.401(a)-20, Q & A10(b)(3). The IRS regulation states: “A payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made.” 26 C.F.R. § 1.401(a)-20, Q & A-10(b)(3) (emphasis added). Put another way, we must “consider[J” the lump sum payments here to have “occurred]” on each plaintiffs respective Benefit Commencement Date so long as payment was only “reasonably” delayed.[1]
I have no doubt that payment was “reasonably” delayed — and here I part ways with Judge Brown. According to Judge Brown, it was reasonable for U.S. Airways to delay payment while its pension plan *445 administrator calculated benefits, reviewed these calculations, checked for qualified domestic relations orders, cut the check and then sent it to the pilot. Brown Op. at 44(M1. These tasks required fifteen to twenty-one business days to complete— corresponding to roughly three to four calendar weeks. Judge Brown, however, omits one important detail. In order to begin calculations in the first place — and set the three- to four-week process in motion — the pension plan administrator has to know the pilot’s “Final Average Earnings,” a number derived in part from the pilot’s earnings during his final month before retirement. Unlike a salaried employee, a pilot working for U.S. Airways earns an hourly wage. His pay can fluctuate considerably from one month to the next based on the number of hours logged and differentials for night pay, “overwater pay” and other adjustments. Weidenmuller Dep. at 65-66 (Joint Appendix (JA) 185-86). Because of the month-to-month variance, the pilot’s final-month earnings are not calculated and finalized until the eighteenth day of the month following his retirement.[2] Taking into account the eighteen-day delay at the front end, I calculate the entire sequence — from computing a pilot’s final-month salary to payment of his lump sum benefit — required roughly forty to forty-five days.
Judge Brown maintains that we should not take into account the eighteen-day period for computing a pilot’s final-month earnings because the pension plan administrator knows the pilot’s retirement date in advance and “can plan accordingly.” Brown Op. at 441 n. 1. The unknown quantity, however, is not the date of the pilot’s retirement but the amount of his final-month earnings — which, as noted above, varies from one month to the next. Judge Brown also seems to doubt whether eighteen days is really necessary to calculate the pilot’s final-month earnings. See id. (eighteen-day delay “says nothing of how long it took the Plan to calculate [final-month] earnings”). The burden of proof, however, does not rest on U.S. Airways (or its successor, the PBGC) to establish the reasonableness of the forty-five day delay in paying the plaintiffs’ lump sum benefits. Rather, it is the plaintiffs’ burden to establish the unreasonableness of the delay— including both the eighteen-day period to compute final-month earnings and the two-to three-week period to calculate the lump sum benefit amount. Cf. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir.1998) (ERISA plaintiff “bears the burden of proving his entitlement to contractual benefits”). Because the plaintiffs have not carried their burden, I would affirm the district court’s denial of interest.
My colleagues’ decision to remand may well open the courthouse doors to litigation over de minimis amounts of interest accrued during a few weeks or even days. The plaintiffs’ victory is hollow to say the least in light of our holding denying attorney’s fees; they are left with a four-digit recovery and, undoubtedly, five- or even six-digit legal costs. Moreover, Judge Brown concedes that a delay of up to thirty days would be reasonable. Brown Op. at 440-41. Because she and I agree that U.S. Airways acted reasonably at least up to the thirty-day mark, the plaintiffs should recover — at most — fifteen days’ interest, meaning they should receive no more than one-third of the amount they are asking for. The difference is impor *446 tant given the likelihood that on remand the plaintiffs will ask for prejudgment interest going back roughly fifteen years (Stephens) and twelve years (Mahoney). See Moore v. CapitalCare, Inc., 461 F.3d 1, 12 (D.C.Cir.2006) (prejudgment interest “presumptively appropriate” for unpaid ERISA benefits). Assuming the plaintiffs do so, the applicable interest rate is within the district court’s discretion, see Berger v. Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111, 1139 (D.C.Cir.1999). Given the significant decline in long-term interest rates, however, I doubt that the rate of 6.25 per cent, suggested by the plaintiffs’ expert, Poulin Deck ¶ 8, would be a proper rate to carry the interest forward to the judgment date. See Pension Benefit Guar. Corp., Lump Sums, http://www.pbgc.gov/prac/interest/vls.html (last visited June 1, 2011).
Finally, because the plaintiffs are entitled only to “appropriate equitable relief’ under ERISA, 29 U.S.C. § 1303(f)(1), it is worth noting that they have already received more than many U.S. Airways annuitants will ever see. U.S. Airways pilots who reached retirement age after April 1, 2000 — a few years after plaintiff Stephens and just thirteen months after plaintiff Mahoney — received nothing from the distribution of plan assets and thus had their benefits capped at the statutory maximum of $28,585.20 per year, see 29 U.S.C. § 1322(a)-(b); 29 C.F.R. pt. 4011, app. B; Press Release, Pension Benefit Guar. Corp., PBGC Becomes Trustee of U.S. Airways Pension Plan for Pilots (Apr. 1, 2003) [http://www.pbgc.gov/news/press/ releases/pr03-32.html], in some cases collecting less than 50 cents on the dollar. In re U.S. Airways Grp., Inc., 296 B.R. 734, 741 (Bankr.E.D.Va.2003); Nanette Byrnes & David Welch, The Benefits Trap, Bus. Wk., July 19, 2004; Kathleen Pender, What They’ll Get: How Pension Agency Pays Out, S.F. Chron., May 12, 2005, at C 1. It hardly seems equitable to gild the plaintiffs’ lily, even minimally, when they are already far better off than their hapless annuitant peers.
Accordingly, I respectfully dissent in part.

. Although the regulation on its face applies only to a joint and survivor annuity, I nevertheless believe it should guide our analysis because there is no practical difference from a pension plan administrator's point of view between paying a joint and survivor annuity and paying a lump sum benefit. I note that the regulation is “written in question and answer form” but "[tjhis novel format does not alter [its] weight as regulationf].” Hurwitz v. Sher, 982 F.2d 778, 782 n. 4 (2d Cir.1992), cert. denied, 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993).

. For example, plaintiff Stephens retired on November 25, 1996. His earnings for the month of November were calculated and he received his final paycheck — reflecting his November earnings — on December 18, 1996. Only then did the pension plan administrator have the necessary information to calculate Stephens's lump sum benefit.